WACKER OIL, INC., Plaintiff
and Appellee,

v.

LoneTREE ENERGY, INC. and
Nodana Petroleum Corporation,
Defendants and Appellants.

Civ. No. 890394.

Supreme Court of North Dakota.

July 31, 1990.

Fleck, Mather, Strutz & Mayer, P.C., Bismarck, for plaintiff and appellee; argued by Paul W. Summers.

Bjella, Neff, Rathert, Wahl & Eiken, P.C., Williston, for defendants and appellants; argued by Dwight C. Eiken.

LEVINE, Justice.

LoneTree Energy, Inc. and Nodana Petroleum Corporation appeal from a district court summary judgment quieting title in Wacker Oil Inc., to the leasehold estate in oil and gas on certain land in Bottineau County. We affirm.

Ellen and Edwin Koehler were divorced in California in 1977. Ellen and Edwin entered into a property settlement agreement providing, in part, that each was to receive one-half of the mineral rights in certain real estate in Bottineau County in North Dakota. The property agreement was incorporated into the California divorce decree, which also ordered the parties to execute conveyances to effectuate the various property transfers ordered therein. At the time this divorce judgment was entered, neither Ellen nor Edwin owned, or had ever owned, the mineral rights in question. The mineral rights were owned by Ellen's mother.

Ellen's mother died in 1979, leaving Ellen as her sole heir. Ellen received the mineral rights through her mother's estate by deed dated July 30, 1982.

Edwin remarried in 1977. He died on October 19, 1981, leaving as heirs his second wife and four children from his marriage to Ellen.

On March 20, 1982, Ellen signed a stipulation to allow correction of the legal description of the mineral interests in the divorce judgment. The divorce judgment was accordingly amended to include an accurate description of the property.

In 1987, Ellen executed an oil and gas lease on the property to Valero Producing Company, which assigned the lease to Wacker. In early 1989, Edwin's heirs executed leases of their interest in the proper-

ty to LoneTree, which assigned the leases to Nodana.

Wacker commenced this quiet title action against LoneTree and Nodana, asserting that its lessor, Ellen, owned 100 percent of the mineral rights. LoneTree and Nodana answered and counterclaimed, asserting that title to $^{15}/_{32}$ of the leasehold estate should be quieted in them, on the ground that its lessors, Edwin's heirs, held title to $^{15}/_{32}$ of the mineral estate.[1] On cross-motions for summary judgment, the district court quieted title to the leasehold estate in Wacker and determined that LoneTree and Nodana had no interest in the property.

LoneTree and Nodana raise numerous issues on appeal. Their primary argument is that the California divorce decree, which required a conveyance of a mere expectancy in the mineral interests,[2] was not void but merely voidable. They thus assert that Ellen's action in stipulating to a correction of the judgment, after she had acquired an interest in the minerals through her mother's estate, constituted a ratification of the divorce decree and a waiver by Ellen of any defects therein. Wacker responds that the California decree, which purports to transfer a mere expectancy, is a nullity and void, and therefore could not be ratified by Ellen. Wacker further asserts that, under North Dakota law, the California decree has no effect upon title to North Dakota real property.

The district court determined that the California decree was void and could not be ratified by Ellen's subsequent actions. The court further held that the California decree had no effect upon title to real property in North Dakota. We agree that LoneTree and Nodana's lessors acquired no title through the California decree. This issue is dispositive of the appeal, and we therefore find it unnecessary to address the remaining issues raised by the parties.

Our caselaw holds that a foreign divorce decree does not, of its own accord, affect title to real property in North Dakota. In *Rozan v. Rozan*, 129 N.W.2d 694 (N.D. 1964), a California divorce decree purported to award a 65 percent interest in North Dakota real property to the wife, and the remaining 35 percent interest to the husband. In holding that the California decree was a nullity and not entitled to full faith and credit, we stated:

"It is settled in this State that a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property situate in North Dakota, and the California decree, being in personam and adjudicating the equities of the litigants to lands situate in North Dakota, did not have the direct in rem operational effect of transferring title to real property, the situs of which is beyond the territorial jurisdiction of the California court of divorce. A decree or judgment of a court of another jurisdiction having such a purported consequence will not be accorded full faith and credit under Article IV, Section I, of the Constitution of the United States....

"However, authorities are in general agreement that the foreign court of adjudication, having the parties properly before it, may determine equities of those parties in real property situate in another state, and may order and compel conveyance of lands in another state and thus by an in personam decree indirectly affect such title, and it is the executed conveyance and not the decree which is operative upon such title." *Rozan, supra*, 129 N.W.2d at 700. [Citations omitted.]

Because there had been no separate conveyance and the parties relied solely upon the direct in rem operational effect of the California decree to alter, transfer, and vest title, we concluded that there had been no effect upon the title. *See Rozan, supra*, 129 N.W.2d at 708.

1. One of Edwin and Ellen's daughters died in 1987, and her interest, if any, in the mineral estate passed to Ellen. Thus, the leases to LoneTree and Nodana cover $^{15}/_{32}$ of the mineral estate rather than the one-half which Edwin allegedly received through the divorce decree.

2. Under the real property law of both California and North Dakota, a mere possibility, such as an expectancy of an heir apparent, is not to be deemed an interest of any kind, and it cannot be transferred. Sections 700, 1045, Cal.Civ.Code; Sections 47–02–20, 47–09–02, N.D.C.C.

 The California decree in this case requires the parties to execute conveyances, but Ellen never executed a conveyance of the minerals to Edwin. Apparently, no party has ever sought to enforce the judgment in California or North Dakota. Thus, LoneTree and Nodana rely solely upon the divorce decree[3] as the basis for their claim of title. However, as we made clear in *Rozan, supra,* it is the executed conveyance and *not* the decree itself which is operative upon title. Because no conveyance has ever been executed, Edwin never had title, Edwin's heirs never received title, and LoneTree and Nodana, as Edwin's heirs' lessees, have received no title.

Our holding in *Rozan* suggests that a party may seek specific performance of a judicially created obligation to convey real property situated in North Dakota, and a decree of a court of this state ordering such a conveyance could be made self-executing. *See* Rule 70, N.D.R.Civ.P.; *Ellison v. Ellison,* 79 N.D. 46, 50, 54 N.W.2d 656, 659 (1952). Neither Edwin nor his heirs ever sought specific performance of Ellen's obligation to convey.[4] *See Rozan, supra,* 129 N.W.2d at 708 (on rehearing). Nor has any party ever sought enforcement of the judgment in North Dakota.

 This issue is further complicated by the fact that Edwin's heirs and Ellen have not been included as parties, thereby rendering any determination in this action incomplete.[5] Rule 19, N.D.R.Civ.P., requires the joinder of all parties who are materially interested in the subject matter of the action so that the court may grant full relief and adjust the rights of all parties interested. *Schroeder v. Burleigh County Board of Commissioners,* 252 N.W.2d 893, 896 (N.D.1977). Thus, in an action to quiet title all persons appearing of record to have a possible claim or interest in the land involved should be made parties. *Williams Co. v. Hamilton,* 427 N.W.2d 822, 824 (N.D.1988); *Woodland v. Woodland,* 147 N.W.2d 590, 593 Syll. ¶ 1 (N.D.1966).

Counsel for the parties at oral argument adamantly asserted that they did not seek joinder of additional parties and that they seek only to determine their rights vis-a-vis each other. The absence of the additional parties severely compromises LoneTree and Nodana's potential theories of recovery. Ellen's absence precludes any attempt to specifically enforce the provisions of the California decree, thereby leaving LoneTree and Nodana to rely solely upon whatever direct in rem effect the decree has on its own. We also note that the absence of Edwin's heirs from the action may serve to jeopardize Wacker's rights in the future, inasmuch as any judgment in this action may not be binding upon them. *See, e.g., Woodland v. Woodland, supra,* 147 N.W.2d at 597; *Northern Pacific Railway Co. v. Advance Realty Co.,* 78 N.W.2d 705, 716 (N.D.1956).

Our resolution of these issues makes it unnecessary to reach the remaining issues raised by the parties. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

3. LoneTree and Nodana have also suggested that the property settlement agreement entered into between Ellen and Edwin may be separately enforced, without reference to the divorce decree. California, however, employs the merger doctrine, which provides that " '[i]f a property settlement is incorporated in the divorce decree, the settlement is merged with the decree and becomes the *final* judicial determination of the property rights of the parties.' " *Estate of Gibson,* 219 Cal.App.3d 1486, 269 Cal.Rptr. 48, 51 (1990) (*quoting Kulchar v. Kulchar,* 1 Cal.3d 467, 470–471, 462 P.2d 17, 19, 82 Cal.Rptr. 489, 491 (1969)). The merged property agreement is superseded by the decree and has no remaining vitality. *Estate of Gibson, supra,* 269 Cal.Rptr. at 49; *Chelios v. Kaye,* 219 Cal.App.3d 75, 268 Cal.Rptr. 38, 40 (1990).

4. We express no opinion whether, under the facts of this case, Ellen was in fact obligated to convey the mineral rights.

5. We were also informed at oral argument that Ellen has recently conveyed her mineral rights in the property. Thus, there apparently are additional parties with an interest in the property who are absent.