**McKENZIE COUNTY, a municipal entity, Plaintiff,**

v.

**Donald HODEL, Secretary of the Interior, and Robert Burford, National Administrator of the Bureau of Land Management, and Marv LeNoue, Area Administrator of the Bureau of Land Management, and Cynthia L. Embretson, Chief Fluids Adjudication Section, United States Department of Interior, Bureau of Land Management, Defendants.**

Civ. No. 900286.

Supreme Court of North Dakota.

March 19, 1991.

Dennis Edward Johnson (argued), State's Atty., Watford City, for plaintiff.

Lynn C. Jordheim (argued), Asst. U.S. Atty., U.S. Attys. Office, Fargo, for defendants.

ERICKSTAD, Chief Justice.

This case comes to us on certified questions of law from the United States District Court for the District of North Dakota pursuant to Rule 47, N.D.R.App.P. At issue is a dispute between McKenzie County and various federal agencies and officials [hereinafter collectively referred to as the United States] over a 6¼% royalty interest in oil and gas production from land in McKenzie County.

As required by subdivision (c)(2) of Rule 47, the federal district court has provided the following statement of the relevant facts:

"McKenzie County is located in western North Dakota, in what is now referred to as the 'oil patch'. The agricultural usage of the land in the area is primarily for cattle ranching, generally used as grazing lands.

"During the depression and drought years of the 'thirties' the county acquired title to thousands of acres through the failure of the owners to pay the real estate taxes levied and due. The procedures created by the North Dakota Legislature required the county to sell the entire estate it had acquired upon the sale of any properties acquired for taxes. Any interests remaining in the county were subject to redemption by the former owner upon compliance with the procedures established.

"It appears that the legislature wanted the properties owned in total by the buyer from the county, or totally owned by the former owner upon redemption.

"The statutory directions to the county required the county to 'execute and deliver to the purchaser a deed conveying all right title and interest, in and to such property.'

"Congress authorized the Department of the Interior to acquire parcels of land in the late 1930's for conservation and public use purposes. After extensive negotiations, the county and the federal government agreed upon a price and a procedure which left the county 'owning' a 6.25% royalty interest in oil and gas production. The lands were conveyed by the County, by deed to the government, and in addition were the subject of a friendly condemnation action done by the Federal Government to cut off any claims by any of the former owners of the property, the judgment in which also recognized the retention by the county of the royalty interest.

"Oil and gas were discovered in the area and extensive development occurred.

"The department of the interior caused royalty payments to be made to the county as set out in the condemnation judgments. An imaginative former owner, following the statutory redemption procedure, applied to the county to redeem back the royalty interest being paid from the well or wells now located on his former pasture. The County refused to allow 'redemption' and the former landowner sued.

"The State District Court found in favor of the plaintiff, and ordered that the retained royalty interest be conveyed back to the redemptioner. The North Dakota Supreme Court proceeded to rule that the county was without authority to reserve the royalties when it conveyed to the federal government, and the reservation was therefore void. *DeShaw v. McKenzie County*, 114 N.W.2d 263, 265–66 (N.D.1962). As the reservation was void, the county owned nothing of the

former land owner's pasture, and therefore could not allow a redemption. *Id.*

"The North Dakota court left open a possible escape route for the county by stating: 'Because the County has ceased to be the owner of any part of the tax title by the giving of such deed, we need not determine the effect of the judgment in subsequent condemnation proceedings (which recognizes the royalty interests.)' *Id.* at 266.

"Following the decision in *DeShaw,* the Department of the Interior, moving with the rapidity characteristic of land owning government agencies, stopped paying the royalty payment to McKenzie County in June of 1985, some 23 years after the court had indicated that the reservation of a royalty interest was void.

"This action followed.

"It would appear to be settled that the county conveyed its entire interest to the federal government in the tax deeds issued prior to the condemnation judgment. If the county had retained any ownership interest, Mr. DeShaw could have redeemed it.

"The only remaining question would appear to be whether or not the condemnation proceedings and subsequent judgment are in effect a reconveyance to the county of the 6.25% royalty interest, or whether the department of the interior is now in some way estopped from relying upon *DeShaw,* no matter how strange a result ensues. (You cannot get it back Mr. DeShaw, because I don't have it, but I get to keep it, just because.)

"Plaintiff has now moved for a certification of the applicable questions of law presented to the North Dakota Supreme Court, pursuant to Rule 47 of the North Dakota Rules of Appellate Procedure. This rule requires a certification order to set out the question of law to be answered, and a 'statement' of all facts necessary to the resolution of the issue so presented.

"Plaintiff's proposal recognizes the effect of *DeShaw,* namely that the county deed did deliver to the defendant all of the counties [sic] interest in the property, and that the reservation of minerals was void. The proposal than [sic] seeks to have the North Dakota Supreme Court determine if the later stipulation in the condemnation actions brought to 'quiet title' in the Federal Government had the effect of a conveyance back to the county of the minerals covered by the stipulation. The County's position is that its title is not therefor the result of a tax title acquisition, but instead is based upon the 'conveyance' of the condemnation judgments, and the North Dakota statutory provisions are not applicable."

The federal district court certified the following questions of law:

"The question of law can have a different appearance from the 'spin' put on in its presentation.

" 'Does a condemnation judgment, pursuant to a stipulation between the parties, recognizing an otherwise invalid reservation of a mineral interest, operate as a conveyance, so as to give validity to the conveyance as between the parties to the stipulation?'

" 'Does a condemnation judgment, brought for the purpose of quieting title in the Federal Government to lands acquired from the County, insulating the federal government from any claims of former owners who lost the land to the County through tax title proceedings, which recognizes an invalid mineral interest reservation, operate as a conveyance back to the county of the mineral interest covered so as to make no longer applicable the North Dakota statutory provisions declaring the reservation invalid?'

"The issue remains the same, regardless of its phrasing, which could include references to mistakes of law, etc."

We are initially faced with the dilemma of determining precisely what the federal district court has asked us to decide. The federal district court has posed two questions which could be taken as asking us to construe a federal court judgment and determine its legal effect. That would clearly be a question of federal law which the federal district court could better interpret

than we. However, when read in context with the federal district court's entire certification order, we believe the questions presented raise two issues of state law for our consideration[1]:

I. Under North Dakota law, may title to real property be transferred through a judgment without compliance with conveyancing statutes?

II. Do Chapter 288, 1931 N.D.Sess. Laws, and *DeShaw v. McKenzie County*, 114 N.W.2d 263 (N.D.1962), prohibit the County from acquiring title to a mineral interest through operation of a condemnation judgment under the facts presented?

The United States asserts that we should decline to answer the certified questions because the answers will not be dispositive of the action in federal district court. In support, the United States cites *Gelinske v. Farmers Grain & Trading Co.*, 446 N.W.2d 261 (N.D.1989), and *State v. Larson*, 313 N.W.2d 750 (N.D.1981). Both of those cases involved certification to this court from trial courts of this State under Chapter 32–24, N.D.C.C., and Rule 47.1, N.D.R.App.P. We will decline to answer certified questions from courts of this State if our answers would not be dispositive, wholly or principally, of the issues in the case. *E.g., Gelinske v. Farmers Grain & Trading Co., supra*, 446 N.W.2d at 263; *Bellemare v. Gateway Builders, Inc.*, 399 N.W.2d 308, 310 (N.D.1987).

A less stringent standard will be applied, however, in exercising our discretion to answer certified questions from courts of other jurisdictions under Rule 47, N.D.R.App.P. There is a logical policy basis for this apparent dichotomy. If we decline to answer questions certified by a court of this State, the parties may, as a matter of right, appeal from the final judgment or order of the trial court and obtain resolution of the relevant questions of law in this court. Thus, in the interest of judicial economy and orderly procedure, we will only answer certified questions which are dispositive of the issues in the case. However, if we decline to respond to questions certified by a federal court or court of another state, we leave that court to speculate upon unsettled issues of North Dakota law, and the parties have no recourse in the appellate courts of this State. Consequently, we deem it appropriate in this case to exercise our discretion to answer the certified questions.

I.

The first question is whether title to real property may be transferred by operation of a judgment under North Dakota law.

Rule 70, N.D.R.Civ.P., governing judgments of courts of this State, provides: "If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law."[2] Thus, a North Dakota state court judgment can have a direct in rem effect upon title to real property.

We have refused, however, to accord to judgments of other states a direct in rem effect upon North Dakota real estate. In *Wacker Oil, Inc. v. LoneTree Energy, Inc.*, 459 N.W.2d 381, 382–383 (N.D.1990), and *Rozan v. Rozan*, 129 N.W.2d 694, 700 (N.D.1964), we held that a judgment of another state may not directly affect or

---

**1.** The parties raise additional issues which we do not address. As previously stated, it is for the federal district court to determine whether its prior condemnation judgment transferred title to the royalty interest to the County. Similarly, the question of the res judicata effect of the prior judgment is a question for the federal district court. Also left for the federal district court is the determination whether or not the federal government is estopped from challenging the County's interest some fifty years after issuance of the judgment and after paying the royalty to the County for many years. Finally, the federal district court's order does not require us to decide, and the parties did not brief, whether a county of this state has the general authority to hold mineral interests.

**2.** Prior to the promulgation of the Rules of Civil Procedure, Section 28–2009 of the North Dakota Revised Code of 1943 provided that title to real property could be transferred by operation of a judgment.

transfer title to real property situated in North Dakota. The basis for our holding in those cases was jurisdictional: the foreign state court has in personam jurisdiction and may therefore adjudicate the equities of the litigants to North Dakota real property, but it does not have in rem jurisdiction over the property and accordingly cannot directly affect title to the property. *Wacker Oil, Inc. v. LoneTree Energy, Inc., supra,* 459 N.W.2d at 382; *Rozan v. Rozan, supra,* 129 N.W.2d at 700. The foreign state's judgment may order the parties to execute conveyances of North Dakota property, thereby indirectly affecting title, but it is the executed conveyance and not the judgment itself which is operative upon title. *Wacker Oil, Inc. v. LoneTree Energy, Inc., supra,* 459 N.W.2d at 382; *Rozan v. Rozan, supra,* 129 N.W.2d at 700.

A different result arises from a condemnation judgment of a federal court. The United States is statutorily authorized to file a declaration of taking, with the immediate effect that "title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States." 40 U.S.C. § 258a. The Supreme Court of the United States has declared that federal condemnation proceedings are in rem. *E.g., United States v. Carmack,* 329 U.S. 230, 235 n. 2, 67 S.Ct. 252, 254 n. 2, 91 L.Ed. 209, 213–214 n. 2 (1946); *United States v. Petty Motor Co.,* 327 U.S. 372, 376, 66 S.Ct. 596, 599, 90 L.Ed. 729, 734 (1946). Justice Holmes, speaking for the Court in *A.W. Duckett & Co. v. United States,* 266 U.S. 149, 151, 45 S.Ct. 38, 38, 69 L.Ed. 216, 218 (1924), observed that a federal condemnation action "founds a new title and extinguishes all previous rights." We also note that Rule 70, F.R.Civ.P., from which our Rule 70 is derived, states: "If real or personal proper-

ty is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law."

There is a fundamental jurisdictional distinction between an in rem judgment of a federal district court within our State and an in personam judgment of a foreign state court. It is the in rem nature of the former which gives it direct operational effect upon title to real property within this State.

The federal district court's order and the arguments of the parties indicate that there was additional concern over the effect of the North Dakota conveyancing statutes upon transfer of title through operation of a judgment. See generally Title 47, N.D.C.C. The United States asserts that the *language* of the condemnation judgment is *language* of reservation rather than conveyance. However, the federal and state versions of Rule 70 both recognize that a judgment affecting title to real property "has the effect of a conveyance executed in due form of law." It is therefore clear that the judgment language need not comply with the restrictions of the conveyancing statutes. Rather, the relevant question is the effect to be given to the judgment itself. Accordingly, the North Dakota conveyancing statutes do not affect the validity or enforceability of such judgments.[3]

We conclude that North Dakota law does not impede the transfer of title to real property by operation of a judgment.[4]

## II.

The second question presented is whether Chapter 288, 1931 N.D.Sess.Laws, and the decision in *DeShaw v. McKenzie County,* 114 N.W.2d 263 (N.D.1962), prohibit the County from acquiring title to the

---

3. We do not address the potential effect of the Supremacy Clause upon restrictions in state law upon the statutory condemnation process of the federal government. *See, e.g., United States v. Powelson,* 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390, 1400 (1943); 1 Nichols, Eminent Domain § 1.141[7] (1990).

4. Of course, it remains for the federal district court to determine the actual effect of its prior judgment upon title to the property.

disputed mineral rights through operation of the condemnation judgment.

A brief recapitulation of the federal district court's statement of facts is necessary. During the 1920's and 1930's, the County acquired title to various lands through numerous tax forfeitures. In the late 1930's, the United States began acquiring land in that area of the State for conservation and other public purposes. After negotiations, the County deeded the property to the United States with a reservation of a 6¼% royalty interest in oil and gas production. The United States, concerned over its status as a holder of a tax title, then commenced a "friendly" condemnation action to clear title to the land. The subsequent judgment in the condemnation action recognized the County's ownership of a 6¼% royalty interest in oil and gas production.

Chapter 288, 1931 N.D.Sess.Laws, provided that in selling land acquired by the County through tax deed the County was required, upon full payment, to convey "all rights, title and interest in and to such property acquired by the county through the tax proceedings."[5] In applying that provision, this court has held that an attempt by a county to reserve any part of property acquired through tax forfeiture was void, and that the deeds containing such reservations conveyed the counties' entire right, title, and interest in the property by operation of law. *DeShaw v. McKenzie County, supra,* 114 N.W.2d at 266; *Kopplin v. Burleigh County,* 77 N.D. 942, 945–946, 47 N.W.2d 137, 139–140 (1951).

Of particular import is the decision in *DeShaw,* which involved an almost identical factual background as this case. In *DeShaw,* the County received the property in 1929 through tax forfeiture. The County deeded the property to the United States in 1937, with an attempted reservation of mineral rights.[6] The United States then commenced a condemnation action, and a condemnation judgment was entered which included a provision recognizing the County's right to certain mineral interests.[7] In 1960, the former owner of the land, who had lost it to the County in 1929, attempted to redeem whatever interest the County retained in the property.

The *DeShaw* court concluded that the reservation in the 1937 deed was void and that by operation of law the entire interest obtained by the County through the tax proceedings passed to the United States:

> "There is no provision in the law for the county to convey anything less than all of its right, title, and interest in and to such tax-title property. There is no authority for the county to reserve any part of its tax title. The statute having declared what title, estate, and interest of the county shall be conveyed to the purchaser of the land forfeited to it for nonpayment of taxes, a deed conveying a lesser title, estate, or interest is void as to any estate or interest attempted to be reserved contrary to the provisions of law. *Kopplin v. Burleigh County,* 77 N.D. 942, 47 N.W.2d 137.

\*        \*        \*        \*        \*        \*

**5.** The parties do not dispute that Chapter 288 was in force at all times relevant to these transactions.

**6.** There is some confusion in the *DeShaw* decision over the precise nature of the 1937 transaction. The statement of facts suggests that on June 11, 1937, the County gave to the United States an option to purchase the land, with an attempted reservation of mineral rights. In later sections of the opinion, the court refers to a June 11, 1937, deed with reservation of mineral rights. Although it is unclear whether there were actually two documents dated June 11, 1937, or only one, the legal holding in that case is premised upon an attempted reservation in a

1937 deed to the property. Because the factual scenario described by the federal district court in this case includes a deed to the United States prior to the condemnation action, and because the legal holding in *DeShaw* is based upon similar facts, we need not resolve the factual uncertainty in the *DeShaw* opinion.

**7.** Rather than a royalty interest, the condemnation judgment in *DeShaw* recognized the County's right to "prospect for and exploit gas and oil in, on and under said tracts" for twenty-five years, with possible extensions. The parties do not suggest that this factual distinction has any bearing upon the application of *DeShaw* to this case.

"Where the statute specifically provides what the county shall convey, the substance of the deed may not be altered or varied by county officers executing it. Their statutory authority determines what the deed conveys. Thus the substance of the deed may not be changed from what the statute provides shall be conveyed. In this instance, the statute orders the county, in conveying lands forfeited to it for nonpayment of taxes, to convey to the purchaser all right, title, and interest which the county has in such lands. The attempted reservation by McKenzie County in the deed of June 11, 1937, to the United States of America was not a compliance with the law, and the attempted reservation by the county was void." *DeShaw v. McKenzie County, supra,* 114 N.W.2d at 265–266.

Because the former owner could only repurchase or redeem an interest retained by the County as part of the original tax title, and because the 1937 deed had conveyed the County's entire interest under the tax title, the court concluded that there was nothing left that could be redeemed, regardless of whether or not the County had reacquired an interest in the land through later transactions. *DeShaw v. McKenzie County, supra,* 114 N.W.2d at 266. The court specifically left open the question of the effect of the subsequent condemnation judgment, and accordingly the ultimate question of who actually owned the mineral interest.

The question reserved in *DeShaw* is now squarely presented: Does Chapter 288 prohibit a county from reacquiring title to land which it formerly held by tax title? The language of Chapter 288 carefully restricts its application to "rights, title and interest ... acquired by the county through the tax proceedings." The *DeShaw* court carefully pointed out that only such title as had been acquired by tax forfeiture could be redeemed. The nature of the opinion in *DeShaw* clearly suggests, by its careful distinguishing of tax title from subsequent-

ly acquired interests in the property, that Chapter 288 would not prohibit reacquisition by the County. If the *DeShaw* court had agreed with the assertion of the United States that Chapter 288 prohibited the County's reacquisition of the property, it could have simply stated that the County could not possibly own *any* interest in the property, so there was nothing to redeem. The court did not take that approach, but based its decision upon the lack of any remaining *tax* title to the property. We find nothing in Chapter 288 or *DeShaw* which limits the County's authority to reacquire title to property formerly held by tax title.

We do not necessarily agree with the federal district court's suggestion that this conclusion will lead to an absurd result because former owners are barred from redeeming property which the County now owns. *DeShaw* made it clear that former owners could only redeem interests traceable through tax title. We see nothing illogical in a result by which the County fully divests itself of tax title acquired through a prior tax forfeiture and is then allowed to repurchase, take by eminent domain, or otherwise reacquire an interest in the property free of the former owner's right of redemption.[8] To hold otherwise would severely restrict the County's ability to carry out the proper functions of government.

Under the factual circumstances presented by the federal district court, we conclude that Chapter 288, and its interpretation in *DeShaw*, do not prohibit the County from acquiring title to mineral interests through operation of a condemnation judgment.

LEVINE, MESCHKE and GIERKE, JJ.

VANDE WALLE, Justice, concurring specially.

Counties are creatures of the North Dakota Constitution and may act only in the manner and on the matters prescribed by

---

**8.** If, for the sake of discussion, it were conceded that the result barring former owners from redeeming is absurd, it is no more absurd than one by which the United States is unjustly enriched through a forced return, some fifty years after the fact, of a significant portion of the stipulated "just compensation" for the property taken.

the Legislature in statutes enacted pursuant to constitutional authority. *Stutsman County v. State Historical Soc.*, 371 N.W.2d 321 (N.D.1985). As a political subdivision of the State, its rights and powers are determined and defined by law. *Eikevik v. Lee*, 73 N.D. 197, 13 N.W.2d 94 (1944). It is because the county was required to act in accordance with legislative edicts that this Court in *DeShaw v. McKenzie County*, 114 N.W.2d 263 (N.D.1962), reaffirmed its decision in *Kopplin v. Burleigh County*, 77 N.D. 942, 47 N.W.2d 137 (1951), that when the county conveyed title to property it acquired by forfeiture for nonpayment of taxes, it must convey all right, title, and interest to such property as required by statute.

The majority opinion concludes that *DeShaw* does not prohibit reacquisition of the mineral interests by McKenzie County. But in view of the principle espoused by this Court in a line of cases exemplified by *Eikevik v. Lee* and *Stutsman County v. State Historical Soc.*, that conclusion does not appear to entirely resolve the issue of the county's authority to reacquire the mineral interests. Thus, I am not totally convinced we adequately answer the questions certified to this Court without determining whether or not the county has the authority to buy and hold mineral interests other than by operation of law. However, I read footnote one of the majority opinion to hold that the Court does not decide the issue.

Subsequent legislative enactments raise questions which the majority concludes we are not required to answer in this proceeding but which nevertheless appear pertinent. For example, chapter 136 of the 1941 Session laws, section 1 of which was codified as 11-2704 of the NDRC of 1943, repealed by chapter 112 of the 1951 S.L., required the county to reserve fifty percent of all "oil, natural gas and/or mineral" in "all transfers of land hereafter made by any county ... of lands now owned by such county or of lands which may hereafter be acquired by any county ... by tax proceedings, deed, quitclaim deed, or by any other method...." If the county was not entitled to reacquire the mineral interests at the time of the condemnation action, did the 1941 legislation somehow implement the conveyance in the judgment?

Although section 1 of chapter 136 of the 1941 S.L. was repealed in 1951, section 2 remains part of our law. That section, codified as section 11–27–05, NDCC, provides that the county, acting through the county commissioners, may join with the other owner or owners of mineral rights in any lands in which an interest in such rights has been reserved by the county in a lease for production of oil, gas and minerals. Thus, it is apparent that, at least today, the Legislature recognizes the authority of the counties to hold mineral interests although a specified authorization to do so is not readily apparent. *See also* NDCC § 11–27–04.2 and chapter 38–09, NDCC, particularly section 38–09–11.

If a county was authorized to accept money in the condemnation action, was it entitled to accept a mineral interest in lieu thereof, either in payment or as a gift? I am aware of no statutes other than the tax statutes requiring the county to dispossess itself of mineral interests validly acquired. Thus it would seem possible to conclude that the county had the authority to acquire the mineral interests under these circumstances without concluding that the county has the authority to engage in the general purchase of mineral interests as a broker or as an investment. Finally, however, because the quitclaim deed with the reservation and the condemnation judgment with its conveyance were for the same purpose and nearly simultaneous, and because the decision in *DeShaw* left open the question of the effect of the condemnation judgment, it may be that as a matter of equity the original owners or their heirs should yet be given the opportunity to redeem the interest in the forfeited property held by the county. I agree with the majority opinion that a decision which unjustly enriched the federal government, fifty years after the fact, would be absurd. I am not as convinced that permitting the former owners to redeem would, under the circumstances of this case, be as absurd, although it appears a theory of unjust enrichment might also exist as to them. As

the majority opinion observes, we are not called upon to resolve those issues.

I concur in the result.