2015 ND 94

**Todd HALL, Plaintiff and Appellee**

**v.**

**Howard L. MALLOY, Trustee of the Harry L. Malloy Irrevocable Family Mineral Trust, and Lorraine D. Malloy, Defendants and Appellants**

No. 20140196.

Supreme Court of North Dakota.

April 28, 2015.

Derrick L. Braaten, Bismarck, N.D., for plaintiff and appellee.

Sean O. Smith, Bismarck, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶ 1] Howard L. Malloy, as trustee of the Harry L. Malloy Irrevocable Family Mineral Trust, and Lorraine Malloy (collectively referred to as the "Family Mineral Trust") appeal from a summary judgment determining they have no right, title, or interest in disputed mineral interests in a tract of land in Dunn County and quieting title in the disputed mineral interests to Todd Hall. We conclude Harry L. and Lorraine Malloy's 1983 divorce judgment did not convey Harry L. Malloy's after-acquired title in the disputed mineral interests to Lorraine Malloy. We affirm.

I

[¶ 2] At issue in this case is the number of mineral acres owned by Todd Hall in a tract of land in Dunn County as a result of a conveyance from Harry L. Malloy to Todd Hall's predecessor in interest, Edwin Hall. Todd Hall claims he owns 9 net mineral acres in the land and the Family Mineral Trust claims he owns 4.5 net mineral acres in the land. To understand the parties' claims, we outline the chain of title for the disputed mineral interests.

[¶ 3] Before May 1, 1982, Harry L. Malloy owned 90 net mineral acres in the Dunn County land in his individual capacity. On May 1, 1982, Harry L. Malloy, Janet L. Holt, and Gordon O. Holt executed a quit claim deed conveying all their interest in tracts of land in Dunn County, including Harry L. Malloy's 90 net mineral acres, to Harry L. Malloy and Janet L. Holt as trustees for the Harry L. Malloy Trust and the Janet L. Malloy Holt Trust. The quit claim deed was recorded in the office of the Dunn County Register of Deeds in August 1982, and resulted in Harry L. Malloy and Janet L. Holt owning the 90 net mineral acres in the Dunn County tract of land in their capacity as trustees for the trusts.

[¶ 4] In February 1983, Harry L. Malloy and Lorraine Malloy were divorced by a judgment incorporating a settlement agreement. The divorce judgment said it settled the parties' respective property rights "which either of them now has, or may hereafter have, or may claim to have

against the other, or in or to any property of the other of every kind, whether real, personal or mixed, whether now or hereafter owned or possessed by either of them." The judgment stated Harry L. Malloy had "represented that he owns 2,222 net mineral acres" in land in Dunn County, including the 90 net mineral acres in the tract of land involved in this action, and provided Lorraine Malloy was "to receive one-half of [his] interest in and to the mineral acres." Under the judgment, Harry L. Malloy agreed to execute a deed to Lorraine Malloy for one-half of his interest in the mineral acres in a form satisfactory to her. The judgment provided if either party failed to execute necessary documents to vest titles in the respective parties, the judgment constituted a full and present transfer of all rights designated to be relinquished. The judgment was recorded in the office of the Dunn County Register of Deeds in February 1983.

[¶ 5] In November 1983, Harry L. Malloy executed a quit claim mineral deed "sell[ing], remis[ing], releas[ing] and quit claim[ing] . . . an undivided one-half of [his] present interest" in the 90 net mineral acres to Lorraine Malloy. The quit claim deed was recorded in the office of the Dunn County Register of Deeds in November 1983.

[¶ 6] In January 1995, Harry L. Malloy, individually, and Harry L. Malloy and Janet L. Holt, as trustees for the Harry L. Malloy Trust and the Janet L. Malloy Holt Trust, executed a quit claim deed "quit claim[ing]" all their interest in the disputed mineral interests to themselves individually. That quit claim deed was recorded in the office of the Dunn County Register of Deeds in July 1995. The Family Mineral Trust claims that transaction resulted in Harry L. Malloy owning 45 net mineral acres and Lorraine Malloy owning 45 net minerals acres in the Dunn County tract of land under the after-acquired title doctrine.

[¶ 7] In September 1997, Harry L. Malloy and Janet L. Holt executed separate quit claim deeds "quit claim[ing]" the Dunn County land to Edwin Hall, but excepting and reserving 90 percent of all minerals they then owned in the land. Those quit claim deeds were recorded in the office of the Dunn County Register of Deeds in October 1997. Todd Hall claims Harry L. Malloy then owned 90 net mineral acres in the Dunn County land and that transaction conveyed 10 percent of those mineral acres, 9 mineral acres, to his predecessor in interest, Edwin Hall. The Family Mineral Trust claims that conveyance resulted in Edwin Hall's owning 10 percent of 45 net mineral acres, or 4.5 mineral acres.

[¶ 8] In September 2004, Edwin and Jean Hall, as husband and wife, executed a contract for deed conveying their Dunn County land to Todd Hall. The contract for deed was recorded in the Dunn County recorder's office in September 2004. In September 2007, Harry and Carol Malloy, as husband and wife, executed a mineral deed quit claiming all their mineral interests in the Dunn County land to the Harry L. Malloy Irrevocable Family Mineral Trust, and the deed was recorded in the Dunn County recorder's office in September 2007. In October 2012, Edwin and Jean Hall executed a warranty deed conveying the Dunn County land to Todd Hall, and the deed was recorded in the Dunn County recorder's office in October 2012.

[¶ 9] In June 2013, Todd Hall sued the Harry L. Malloy Irrevocable Family Mineral Trust and Lorraine Malloy to quiet title to the disputed mineral interests, alleging that he owned 9 net mineral acres in the Dunn County land through conveyances from Harry L. Malloy in his individ-

ual capacity. Todd Hall claimed Harry L. Malloy's earlier purported conveyances of those mineral interests in his individual capacity to Lorraine Malloy by the 1983 divorce judgment and the 1983 quit claim deed did not convey the mineral interests to her because Harry L. Malloy then owned the interests in his capacity as trustee for the Harry L. Malloy Trust. The Family Mineral Trust answered, asserting Todd Hall owned 4.5 net mineral acres in the Dunn County land.

[¶ 10] The district court granted Hall summary judgment, concluding that in 1983, Harry L. Malloy owned the disputed mineral interests in his capacity as trustee for the Harry L. Malloy Trust and the 1983 divorce judgment and quit claim deed did not convey the disputed mineral interests to Lorraine Malloy. The court also concluded the after-acquired title doctrine did not vest title in the disputed mineral interests in Lorraine Malloy when Harry L. Malloy reacquired them in his individual capacity in 1995. The court explained the 1983 divorce judgment did not purport to convey the mineral interests by a "proper instrument" under N.D.C.C. § 47–10–15, because:

> The statute, [N.D.C.C. § 47–10–15], requires a "proper instrument" to have been used to convey title. Although no definition is provided as to what a "proper instrument" is, the divorce judgment, as discussed above, is invalid as to conveying title to the Mineral Estate to Lorraine since the Trustee held title and was not a party to the divorce. As such, since the method of conveyance was invalid, the after-acquired title statute does not apply. Therefore, title to the Mineral Estate did not vest in Lorraine at the time of the divorce or in 1995 when Harry acquired the property individually.

The court quieted title to Todd Hall in 9 net mineral acres in the Dunn County land.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The Family Mineral Trust's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

■ [¶ 12] The district court decided this action by summary judgment, which " is a procedural device to promptly and expeditiously dispose of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of factual disputes will not alter the result." *Carkuff v. Balmer*, 2011 ND 60, ¶ 6, 795 N.W.2d 303. "On appeal, questions of law are fully reviewable." *Id.* We review a district court's grant of summary judgment de novo. *American Family Ins. v. Waupaca Elevator Co.*, 2012 ND 13, ¶ 8, 809 N.W.2d 337.

## III

■ [¶ 13] The Family Mineral Trust argues the 1983 divorce judgment is a legally executed conveyance binding Harry L. Malloy and his subsequent grantees, including Todd Hall, and had the legal effect of immediately transferring Harry L. Malloy's mineral interests in the Dunn County land to Lorraine Malloy under the after-acquired title doctrine when he reacquired title to the mineral interests in his individual capacity in 1995. The Family Mineral Trust argues the divorce judgment is a "proper instrument" within the meaning of the after-acquired title doctrine under N.D.C.C. § 47–10–15 and claims the plain language of the divorce judgment evidences an intent to convey after-acquired title to Lorraine Malloy. Todd Hall

responds the divorce judgment does not have the effect of a legally executed conveyance under N.D.R.Civ.P. 70 and is not a proper instrument to pass after-acquired title under N.D.C.C. § 47–10–15. He also argues the divorce judgment is like a quit claim deed and did not pass Harry L. Malloy's after-acquired title to Lorraine Malloy.

[¶ 14]   When the 1983 divorce judgment was entered, N.D.R.Civ.P. 70[1] provided, in relevant part:

> If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law.

[¶ 15]   In *McKenzie Cnty. v. Hodel,* 467 N.W.2d 701, 704–05 (N.D.1991), this Court said a North Dakota state court judgment can have a direct effect upon title to real property, but a judgment from another state may not directly affect or transfer title to real property located in North Dakota. This Court explained the basis for that result was jurisdictional—"the foreign state court has in personam jurisdiction and may therefore adjudicate the equities of the litigants to North Dakota real property, but it does not have in rem jurisdiction over the property and accordingly cannot directly affect title to the property." *Id.* at 705. This Court said, however, the "foreign state's judgment may order the parties to execute conveyances of North Dakota property, thereby indirectly affecting title, but it is the executed conveyance and not the judgment itself which

is operative upon title." *Id.* Under *Hodel,* a North Dakota state court judgment can directly convey property located in North Dakota.

[¶ 16]   The issue here involves the effect of the 1983 divorce judgment on the after-acquired title doctrine in N.D.C.C. § 47–10–15. We have recognized N.D.C.C. § 47–10–15 codifies the after-acquired title doctrine and have described that doctrine as " 'one under which title to land acquired by a grantor who previously attempted to convey title to the same land which he did not then own inures automatically to the benefit of his prior grantee.' " *Carkuff,* 2011 ND 60, ¶ 9, 795 N.W.2d 303 (quoting *Torgerson v. Rose,* 339 N.W.2d 79, 82 (N.D.1983)). *See* 14 Richard B. Powell, *Powell on Real Property* § 84.02[1] (2014); 23 Am. Jur. 2d *Deeds* § 278 (2013). The doctrine of after-acquired title is a product of estoppel by deed, and the applicability of the doctrine depends on the specific representations used to convey property. 14 *Powell on Real Property,* at § 84.02[2][a] and [3][a]; 23 Am. Jur. 2d *Deeds,* at §§ 278 and 279.

[¶ 17]   In *Carkuff,* 2011 ND 60, ¶¶ 10–11, 795 N.W.2d 303, we explained the after-acquired title doctrine depends on the conveying language and said a quit claim deed generally conveys only the grantor's present interest or title, if any, in property, rather than the property itself. In that case, we construed the deed, which was denominated as a quit-claim deed but included the word "grant," as a quit-claim deed that passed only the conveyor's present interest in the property, rather than the property itself. *Id.* at ¶¶ 1, 13–14.

1.   Rule 70, N.D.R.Civ.P., was amended effective March 1, 2011, and now provides in substantially similar language in subdivision (b):

> If the real or personal property is within the state, the court, instead of ordering a conveyance, may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.

We explained the word "grant" may ordinarily evidence an intent to transfer the conveyor's entire fee simple interest in property rather than only the conveyor's present interest in the property, but the conveying instrument must be construed as a whole to determine the intention of the parties. *Id.* at ¶¶ 10–14.

[¶ 18] When Todd Hall sued Lorraine Malloy and the Harry L. Malloy Irrevocable Family Mineral Trust in June 2013, N.D.C.C. § 47–10–15,[2] provided:

> When a person purports by proper instrument to grant real property in fee simple and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or the grantee's successors.

[¶ 19] Statutory interpretation is a question of law, fully reviewable on appeal. *In re P.F.*, 2008 ND 37, ¶ 11, 744 N.W.2d 724. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, the letter of the statute may not to be disregarded under the pretext of pursuing its spirit. N.D.C.C. § 1–02–05. Section 1–02–39, N.D.C.C., provides:

> If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:
>
> 1. The object sought to be attained.
> 2. The circumstances under which the statute was enacted.
> 3. The legislative history.
> 4. The common law or former statutory provisions, including laws upon the same or similar subjects.
> 5. The consequences of a particular construction.
> 6. The administrative construction of the statute.
> 7. The preamble.

Consistent with this statute, we may also consider the derivation of our statutes, and authorities construing statutes from which our statutes are derived. *Loken v. Magrum*, 380 N.W.2d 336, 338–39 (N.D.1986).

[¶ 20] The language authorizing the passing of after-acquired title to a grantee by operation of law in N.D.C.C. § 47–10–15 applies "[w]hen a person purports by proper instrument to grant real property in fee simple and subsequently acquires any title or claim of title thereto." The source note for N.D.C.C. § 47–10–15 reflects a history dating back to the 1877 Revised Codes of the Territory of Dakota, Civ. Code § 633, and a derivation from Cal. Civ.Code §§ 1105, 1106, 1109, 1110, 1114, and 1115. We also recognize that several other statutes in N.D.C.C. title 47 are derived from California statutes and use the term "instrument." *See generally* N.D.C.C. chs. 47–10 and 47–19. We have often said that California decisions construing statutes from which our statutes are derived are entitled to respectful consideration in construing our statutes and may be persuasive. *E.g., Western Nat'l Mut. Ins. Co. v. University of North Dakota*, 2002 ND 63, ¶ 13, 643 N.W.2d 4; *Estate*

---

2. Section 47–10–15, N.D.C.C., was amended effective August 1, 2013. *See* 2013 N.D. Sess. Laws ch. 346, § 1. The parties have not argued the amended version of N.D.C.C. § 47–10–15 applies to this proceeding, and the Family Mineral Trust's argument states the 2013 amendments do not apply to this proceeding. *See Gadeco, LLC v. Industrial Comm'n*, 2013 ND 72, ¶¶ 12–14, 830 N.W.2d 535 (confining appellate decision to version of administrative rule relied upon by parties).

*of Zins by Kelsch v. Zins*, 420 N.W.2d 729, 731 (N.D.1988).

[¶ 21] In 1880, the California Supreme Court construed Cal. Civ.Code § 1107, from which N.D.C.C. § 47–10–08 was derived, and said a "judgment" was not an "instrument" under the California statutes. *Hoag v. Howard*, 55 Cal. 564, 565–66 (1880). The California Supreme Court cited several California statutes using the word "instrument," including Cal. Civ. Code § 1106, and construed the word "instrument" consistently throughout those statutes "to indicate some written paper or instrument signed and delivered by one person to another, transferring the title to or creating a lien on property, or giving a right to a debt or duty." 55 Cal. at 565. The court said the word "instrument" did not encompass a writ issued by a court or officer or any other authority and cited Cal. Civ.Code § 1158, which authorized the recording of any "instrument or judgment affecting title to or possession of real property" in language similar to the predecessor to N.D.C.C. § 47–19–01. 55 Cal. at 566. The court explained the legislature's use of the disjunctive phrase "instrument or judgment" in Cal. Civ.Code § 1158 evidenced the legislature's intent that a "judgment" was not the same as an "instrument" under the California statutes. 55 Cal. at 566.

[¶ 22] Section 47–19–01, N.D.C.C., also initially authorized recording of "any instrument or judgment affecting title to or possession of real property." *See* 1877 Revised Code of the Territory of Dakota, Civ. Code § 647; 1887 Compiled Laws of Territory of Dakota, Civ. Code § 3268; 1895 Revised Codes of North Dakota, Civ. Code § 3563; 1899 Revised Codes of North Dakota, Civ. Code § 3563; 1905 Revised Codes of North Dakota, Civ. Code § 5001; 1913 Compiled Laws of North Dakota, Civ. Code § 5546. The language

currently found in N.D.C.C. § 47–19–01, however, no longer uses the disjunctive phrase "instrument or judgment"; rather, our statute now authorizes recording of "any instrument affecting the title to or possession of real property" and was changed to its present form in N.D. Rev. Code of 1943 § 47–1901. Although our statute for recording instruments in N.D.C.C. § 47–19–01 has changed, the California statute has not. *See* Cal. Gov't Code § 27280 (West 2008). We also recognize the language in the predecessor to N.D.C.C. § 47–19–02 initially said "judgments" affecting title to real property may be recorded without acknowledgment, and the current language says certain "instruments" may be recorded without acknowledgment or further proof, including an "instrument" issued or certified by the judiciary of this state. N.D.C.C. § 47–19–02. The change in language from the disjunctive phrase "instrument or judgment" to "instrument" coupled with the reference to "any instrument" issued or certified by the judiciary of this state in N.D.C.C. § 47–19–02 evidences an intent that an instrument includes a judgment in the current statutory provisions in N.D.C.C. title 47. Considering the words in the current statutory provisions together to give meaning to related provisions under our rules for statutory construction, we conclude an instrument includes a judgment under N.D.C.C. title 47.

[¶ 23] Although we construe an instrument to include a judgment under N.D.C.C. title 47, the plain language of N.D.C.C. § 47–10–15 goes on to require an "instrument [purporting] to grant real property in fee simple." Section 47–04–04, N.D.C.C., says "Every estate of inheritance is a fee, and every such estate, when not defeasible or conditional, is a fee simple or an absolute fee." An estate in fee simple is the greatest estate or interest

which can be possessed in land and embraces all the estates that may be carved from land. *Henry S. Grinde Corp. v. Klindworth*, 77 N.D. 597, 609, 44 N.W.2d 417, 425 (1950). Under that language, the after-acquired title doctrine requires an instrument to purport to grant all the estates or interests that can be possessed in land.

[¶ 24] Although a judgment is not a quit claim deed, our decisions about after-acquired title focus on the language of the conveying instrument to determine the application of the doctrine. *See, e.g., Carkuff*, 2011 ND 60, ¶¶ 10–14, 795 N.W.2d 303 (construing word "grant" in quit claim deed with other language in deed and holding deed did not pass after-acquired title). In *Carkuff*, at ¶ 10, we explained that if a deed purported to convey only the conveyor's right, title, and interest in land as distinguished from the land itself, the deed did not pass after-acquired title. *See also Aure v. Mackoff*, 93 N.W.2d 807, 810–11 (N.D.1958) (construing deed in nature of quit claim deed to not pass after-acquired title); *Bilby v. Wire*, 77 N.W.2d 882, 888 (N.D.1956) (same). We explained the word "grant" may ordinarily evidence an intent to convey the entire fee simple interest in the property rather than only the conveyor's interest in the property, but the conveying instrument must be construed as a whole to determine the intention of the parties. *Carkuff*, at ¶¶ 10–14.

[¶ 25] Here the relevant instrument is the 1983 divorce judgment. In *Sullivan v. Quist*, 506 N.W.2d 394, 401 (N.D.1993) (quoting *Henry S. Grinde Corp.*, 77 N.D. at 613–14, 44 N.W.2d at 427–28) (On Petition for Rehearing), this Court explained principles for construing judgments:

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." 49 C.J.S., Judgments, § 436, pp. 862 and 863; *Hofer v. Hofer*, Ohio App., [35 Ohio Law Abs. 486], 42 N.E.2d 165, 166 [ (1940) ]. The judgment "should be so construed as to give effect to each and every part of it, and bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation."

[¶ 26] The language of the 1983 divorce judgment says that Harry L. Malloy had "represented that he owns 2,222 net mineral acres" in the Dunn County land and Lorraine Malloy was "to receive one-half of [his] interest in and to the mineral acres." Although the judgment also included some language about property Harry L. Malloy "now has, or may hereafter have" and "whether now or hereafter owned," the language of the judgment, when read as a whole, purported to award Lorraine Malloy "one-half of [Harry L. Malloy's] interest in and to the mineral acres." That language is similar to language employed in quit claim deeds conveying only a grantor's interest in the land and not the land itself. *See Carkuff*, 2011 ND 60, ¶¶ 12–14, 795 N.W.2d 303. The judgment is not a quit claim deed and included no language granting or warranting Harry L. Malloy's title to the mineral acres in fee simple. We conclude the language of the 1983 judgment purported to convey only Harry L. Malloy's interest in the mineral acres as distinguished from a fee simple title to the mineral acres. We therefore conclude the district court did not err in concluding the after-acquired title doctrine in N.D.C.C. § 47–10–15 did

not apply to Harry L. Malloy's interest in the disputed mineral acres listed in the 1983 divorce judgment.

## IV

[¶ 27]   We affirm the judgment.

[¶ 28]   GERALD W. VANDE WALLE, C.J. and LISA FAIR McEVERS, J., concurs.

DANIEL J. CROTHERS, J., concurs in the result.

KAPSNER, Justice, dissenting.

[¶ 29]   I respectfully dissent from the majority's conclusion in paragraphs 1 and 26.

[¶ 30]   I agree with the majority's analysis in paragraphs 2 through 25. However, the conclusion the majority reaches does not follow that analysis and does not conform to the language or intent of the judgment which the majority treats as an "instrument" for purposes of applying N.D.C.C. § 47–10–15, the codification of the after-acquired title doctrine.

[¶ 31]   Although the facts later proved otherwise, Harry Malloy explicitly represented to Lorraine Malloy in the settlement agreement which was incorporated into the judgment, that he *owned* specific mineral acres and would take further steps to assure her full acquisition of one-half interest in those mineral acres:

(a)(ii) Harry has represented that he owns 2,222 net mineral acres in the property described and set forth in Exhibit "B", and Lorraine is to receive one-half of Harry's interest in and to the mineral acres as set forth in Exhibit "B", and Harry agrees that he will have executed or execute a deed to Lorraine for one-half of his interest in said mineral acres in a form satisfactory to Lorraine, and he will further execute at the same time necessary assignments of in-

terests and leases currently in effect on the said conveyed mineral interests, and will also give notice to all companies holding leases of the assignment....

Exhibit B to the divorce judgment includes the legal description to the mineral acres at issue. This is not similar to a quitclaim deed in which the grantor is intending to convey "whatever" interest he may have. Rather, Harry Malloy represents that he owns them and he is bound to convey them.

[¶ 32]   The language of the judgment, which incorporates a "stipulation settlement executed by the parties," goes further and invites the application of the after-acquired property statute:

7.   Each of the parties hereto hereby agrees to execute and acknowledge, concurrently with the execution hereof, good and sufficient instruments necessary or proper to vest the titles and estates in the respective parties hereto, as hereinabove provided, and hereafter, at any time and from time to time, to execute and acknowledge any and all documents which may be necessary or proper to carry out the purposes of this Agreement and establish of record the sole and separate ownership of the several properties of said parties in the manner herein agreed and provided. If either party hereto for any reason shall fail or refuse to execute any such documents, then this Agreement shall, and is hereby expressly declared to constitute a full and present transfer, assignment, and conveyance of all rights hereinabove designated to be relinquished and waived.

[¶ 33]   The judgment also provides:

11. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisees and grantees of the parties hereto.

[¶ 34] The divorce judgment was recorded in the office of the Register of Deeds of Dunn County on February 15, 1983. It has provided public notice of Lorraine Malloy's interest in the mineral acres at issue since that recording date.

[¶ 35] The majority notes in paragraph 24 we should focus on the language of the conveying instrument, which in this case is the judgment, to determine the application of the after-acquired title doctrine. Construing the terms of the judgment, its clear intent is that Harry Malloy is to convey one-half the mineral acres, which he represents he owns, to Lorraine Malloy. He executed an ineffective quitclaim deed to those minerals in November 1983. However, when Harry Malloy re-acquired the minerals in January 1995, the provisions of the judgment should have given Lorraine Malloy her one-half interest under the after-acquired title doctrine:

> The after-acquired title doctrine "is one under which title to land acquired by a grantor who previously attempted to convey title to the same land which he did not then own inures automatically to the benefit of his prior grantee." *Torgerson v. Rose*, 339 N.W.2d 79, 82 (N.D. 1983).(quotation omitted).

*Carkuff v. Balmer*, 2011 ND 60, ¶ 9, 795 N.W.2d 303.

[¶ 36] I would reverse.

[¶ 37] CAROL RONNING KAPSNER