2017 ND 110

**BLACK STONE MINERALS COMPANY, L.P. and the Hamill Foundation, Plaintiffs**

**and**

**Missouri River Royalty Corporation and Bauer Family LLP, Plaintiffs and Appellants**

**v.**

**Kate Sarah BROKAW, Gordon Brokaw as Personal Representative of the Estate of Evelyn Brokaw, Gordon Brokaw as Trustee of the Testamentary Trust U/W of Evelyn G. Brokaw FBO**

Jacob Gordon Brokaw, Gordon Brokaw as Trustee of the Testamentary Trust U/W of Evelyn G. Brokaw FBO Emily Sue Brokaw, Kristen Jones, Steven Irgens, James Scott Brokaw, Ryan Kyle Brokaw, Brett Christopher Brokaw, Gordon D. Brokaw, Linda B. Irgens, Martha Brokaw, Lyman G. Brokaw, and all other persons unknown claiming any estate of, interest in or lien or encumbrance upon, the real estate described in the complaint, Defendants and Appellees

No. 20160286

Supreme Court of North Dakota.

Filed 4/25/2017

Jannelle R.S. Combs, 436 Brunswick Drive, Bismarck, N.D. 58503, for plaintiffs and appellants.

Aaron J. Weber (argued), Ariston E. Johnson (appeared), and Dennis E. Johnson (on brief), 109 Fifth Street SW, P.O. Box 1260, Watford City, N.D. 58854–1260, for defendants and appellees.

Tufte, Justice.

[¶ 1] Missouri River Royalty Corporation and Bauer Family LLP appeal a district court's order granting summary judgment to the defendants, most of whom are members of the Brokaw family (collectively "Brokaw"). On cross motions for sum-

mary judgment, the district court quieted title to certain minerals in favor of Brokaw. We affirm in part, reverse in part, and remand to correct the judgment.

I

[¶ 2] In 1945, Lyman Brokaw acquired a full, undivided interest in 160 acres through a Williams County tax deed. Later that year, Lyman and his wife, Martha Brokaw, initiated a quiet title action. The district court entered judgment by default quieting title in Lyman and Martha Brokaw. The judgment decreed: "the Plaintiffs, Lyman G. Brokaw, also known as L. G. Brokaw, and Martha Brokaw, his wife, are the owners in fee simple absolute of [the property]." Other than the judgment recorded in Williams County, the parties agree no other records of the quiet title action exist today.

[¶ 3] In 1958, Lyman conveyed "an undivided full interest" in the minerals in and under the property to North American Royalties Inc. ("North American"). Later that year, North American conveyed an undivided one-half interest in the minerals to Claud B. Hamill. Over the next fifty years, North American transferred other fractional interests to various persons and entities. By the time of this action, the Plaintiffs alleged the ownership proportions of the 160 mineral acres were as follows: The Hamill Foundation—50%; Black Stone Minerals Co.—25%; Missouri River Royalty Corp.—18.75%; and Bauer Family LLP—6.25%. Appellants Missouri River Royalty Corp. and Bauer Family LLP will be referred to below as "North American Successors."

[¶ 4] North American Successors claim ownership through North American and initiated this action against Brokaw to quiet title in the minerals. Brokaw moved for summary judgment, arguing the 1945 judgment vested a one-half interest in Martha and thus Lyman's conveyance to North American of a "full interest" had transferred only the one-half interest he owned and not the one-half interest vested in Martha by the 1945 judgment. North American Successors also moved for summary judgment, arguing first that the 1945 judgment did not vest one-half interest in Martha, and in the alternative that the Marketable Record Title Act or the doctrines of adverse possession and bona fide purchaser supported their claims to title.

[¶ 5] The district court granted Brokaw's motion for summary judgment. Its order and judgment decrees that a one-half interest in the minerals is owned by "North American Royalties Inc. and Successors in interest (Plaintiffs)." The district court did not make specific findings on the mineral interests of Hamill, Black Stone, Missouri River, and Bauer. The four Plaintiffs below moved the court to correct the judgment, arguing that it vested title in a non-party, North American Royalties, Inc. The district court denied the motion. North American Successors appeal, arguing the district court erred in its determinations regarding (1) the 1945 judgment vesting a one-half mineral interest in Martha; (2) adverse possession; (3) the Marketable Record Title Act; (4) bona fide purchaser; and (5) their motion to correct judgment.

II

[¶ 6] North American Successors argue the district court erred by concluding as a matter of law that the 1945 judgment vested in Martha Brokaw one-half interest in the minerals. Under N.D.R.Civ.P. 70(b), a North Dakota court judgment can vest title to property in any party "and such judgment has the effect of a conveyance." McKenzie County v. Hodel, 467 N.W.2d 701, 704–05 (N.D. 1991). The question before us is whether the district

court properly interpreted the 1945 judgment as divesting a one-half interest from Lyman Brokaw and vesting it in Martha.

[¶ 7] Interpretation of the 1945 judgment is a question of law that we review de novo. Slorby v. Slorby, 2009 ND 11, ¶ 4, 760 N.W.2d 89. We start with the text of the judgment to determine whether its language is plain and unambiguous or ambiguous. Id. at ¶ 5. If the language is unambiguous, then the analysis ends and we must accept the "literal meaning of the language used." Sullivan v. Quist, 506 N.W.2d 394, 401 (N.D. 1993). Only if the language is ambiguous is there room for construction to reach a fair and reasonable interpretation. Id.

[¶ 8] The 1945 judgment decrees that Lyman and Martha were "the owners in fee simple absolute" of the property. North American Successors asserts this language is ambiguous because it does not describe the relative ownership between Lyman and Martha. They argue fee simple absolute in this context means the property belonged to them and nobody else, but it does not describe the fractional share of interest that might have been vested in Martha. Lyman and Martha may have been co-plaintiffs in the quiet title action simply because of her homestead interest, without intention to alter their relative ownership. E.g., Sexton v. Sutherland, 37 N.D. 500, 510–11, 164 N.W. 278, 282 (N.D. 1917) (acknowledging "she may maintain an action to determine adverse claims to her homestead, even though the legal title thereto is vested in her husband"). Although that contrary intent is possible, a mere possibility of a contrary intent does not alter what the district court unambiguously did here: vest title in both Lyman and Martha.

[¶ 9] Absent certain exceptions not applicable here, "[e]very interest created in favor of several persons in their own right is an interest in common." N.D.R.C. § 47–0208 (1943). The 1945 judgment vested ownership of the property in Lyman and Martha "in fee simple absolute" without further detail. Thus the judgment vested title in Lyman and Martha as tenants in common. Property interest owned by tenants in common is "presumed to be equal." 7 Richard R. Powell, Powell on Real Property § 50.02[5] (Michael Allen Wolf ed., 2017). Parties may rebut this presumption with competent evidence, City of Detroit v. Jacobs, 145 Mich. 395, 108 N.W. 671, 672 (1906), but at oral argument the parties confirmed there is no known evidence that might be produced to establish the intent of the district court or the parties in 1945. Accordingly, we conclude the 1945 judgment vested title to the property in Lyman and Martha in equal shares.

[¶ 10] Lyman Brokaw then conveyed "an undivided full interest" to North American. At the time of the conveyance in 1958, he owned only a one-half interest as discussed above. Because he could not convey what he did not own, we conclude Lyman Brokaw conveyed only his one-half interest to North American. Martha retained her one-half, which eventually passed to Lyman and Martha Brokaw's descendants, the defendants in this current action.

### III

[¶ 11] We now consider whether North American Successors adversely possessed the one-half interest retained by Martha. Adverse possession, a doctrine born in common law, is codified within N.D.C.C. chs. 28–01 and 47–06. Under N.D.C.C. § 28–01–08, a party has legal title to land when that party establishes it possessed the land under claim of title and continuously occupied the land for twenty years. Our decisions have defined

"possession" in this context as requiring possession that is "actual, visible, continuous, notorious, distinct, hostile, and of such character" that "unmistakably indicates" the occupant asserted exclusive ownership. Moody v. Sundley, 2015 ND 204, ¶ 15, 868 N.W.2d 491. "Possession" of oil and gas minerals for adverse possession purposes requires more than merely executing oil and gas leases. Sickler v. Pope, 326 N.W.2d 86, 93 (N.D. 1982).

[¶ 12] The undisputed facts show no one could have adversely possessed the minerals under our Sickler standard until 2013, when the first well was spudded. North American Successors attempt to overcome the Sickler actual possession standard by arguing the 2013 amendment to N.D.C.C. § 47–19.1–07 redefined "possession" for purposes of analyzing adverse possession.

[¶ 13] The 2013 amendment to § 47–19.1–07 added the following: "The holder of an interest in severed minerals is deemed in possession of the minerals if that person has used the minerals as defined in section 38–18.1–03 and the use is stated in the affidavit of possession provided for in this section." North American Successors argue the plain language of the Marketable Record Title Act establishes the legislature intended for this provision to extend to adverse possession. We disagree. Section 47–19.1–07 begins with "[f]or the purpose of this chapter," which is language of limitation rather than extension. Nowhere in the statute is there any reference to adverse possession. The language of § 47–19.1–07 unambiguously applies only to chapter 47–19.1. The district court did not err by rejecting North American Successors' adverse possession argument.

## IV

[¶ 14] North American Successors also argue their claim succeeds under the Marketable Record Title Act. Under N.D.C.C. § 47–19.1–01, the Act applies only to those who, among other things, are in possession of the property. As previously mentioned, the 2013 North Dakota Legislative Assembly amended N.D.C.C. § 47–19.1–07 to expand the definition of "possession" for purposes of the Act. Possession under § 47–19.1–07 currently requires (1) "us[ing] the minerals as defined in section 38–18.1–03" and (2) recording an affidavit of possession. The record does not indicate that either Missouri River or Bauer, the only parties appealing the district court's decision, filed affidavits of possession. Because they have not complied with the statutory requirements, we conclude the district court did not err.

## V

[¶ 15] North American Successors argue they are good-faith purchasers and deserve protection under N.D.C.C. § 47–19–41. Under § 47–19–41, unrecorded "conveyances" of real estate are void against good-faith purchasers. Section 47–19–42, N.D.C.C., defines "conveyance" under this chapter as including any "instrument" that affects "title to any real property." "Instrument" includes a court judgment. Hall v. Malloy, 2015 ND 94, ¶ 22, 862 N.W.2d 514. The 1945 judgment was filed for record in the county land records before any mineral conveyance relied on by North American Successors. Accordingly, § 47–19–41 does not operate to protect North American Successors from the effect of the 1945 judgment.

## VI

[¶ 16] North American Successors assert the doctrine of laches bars Brokaw from recovery by virtue of Brokaw's failure to assert any claim to the minerals for decades. As explained above, we conclude that the 1945 judgment vested

in Martha Brokaw one-half of the mineral interests. Laches is an affirmative defense arising out of equity. Stenehjem, ex rel. v. National Audubon Society, Inc., 2014 ND 71, ¶ 15, 844 N.W.2d 892. North American Successors' laches claim would convert laches into an offensive weapon capable of divesting a surface owner of mineral interests through inaction. We are aware of no precedent for this proposition and we decline to create one here.

## VII

[¶ 17] The final issue is whether the district court erred by denying North American Successors' motion to correct judgment made pursuant to N.D.R.Civ.P. 60(a). Under N.D.R.Civ.P. 60(a), a district court may "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." This rule, however, "is not a vehicle for relitigating matters that have already been litigated and decided, nor to change what has been deliberately done." Erickson v. Olsen, 2016 ND 33, ¶ 8, 875 N.W.2d 535 (quotation marks omitted).

[¶ 18] Before reaching the merits of the argument, Brokaw asserts we lack jurisdiction to review the district court's order denying the Rule 60(a) motion. This Court had ordered a temporary remand to the district court for a determination of the issue within thirty days. The district court issued its order denying the motion after the deadline. According to Brokaw, the district court lost jurisdiction to decide the motion by failing to determine the issue within the specified time. We instructed the district court to determine the motion and certify it, and the district court complied. That the district court acted beyond our deadline does not divest this Court of jurisdiction. We see no basis for Brokaw's contention, and Brokaw provides

no relevant authority to support its argument. We conclude we have jurisdiction to decide this issue.

[¶ 19] We review a district court's decision on a Rule 60(a), N.D.R.Civ.P., motion under the abuse of discretion standard. See Erickson v. Olsen, 2016 ND 33, ¶ 11, 875 N.W.2d 535. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." Kukla v. Kukla, 2013 ND 192, ¶ 24, 838 N.W.2d 434. The district court's judgment allocates the fractional shares of Brokaw, but it simply identifies "North American Royalties Inc. and Successors in interest (Plaintiffs)" as the owner of an undivided one-half interest. North American Successors moved the district court to correct the judgment and distribute the one-half interest among the plaintiffs. Distributing this one-half interest to its proper owners, however, would have affected a "substantive portion[ ]" of the judgment. Erickson, at ¶ 8 (quotation marks omitted). The district court deliberately declined to make findings on the proper distribution of the one-half interest.

[¶ 20] Although a complete allocation of this one-half interest among the plaintiffs was not properly before the district court in considering the Rule 60(a) motion, it was error to vest any share of title in North American Royalties Inc. The district court's use of "and" in "North American Royalties Inc. and Successors in interest (Plaintiffs)" necessarily implies some ownership in North American. North American Successors informed the lower court in its motion that North American was not a party to the action. Nothing in the record suggests that North American currently has an interest in the minerals. The district court erred to the extent it vested any share of title in North American. The district court offered no explanation for deny-

ing North American Successors' motion with respect to vesting title in North American. We conclude the district court abused its discretion in failing to correct the judgment to exclude North American as having an ownership interest.

## VIII

[¶ 21] For the reasons stated above, we affirm except to the extent the district court vested title in North American. As to that, we reverse the district court's denial of the motion to correct judgment and remand for entry of a corrected judgment vesting title of the one half-interest not held by Brokaw only in North American Royalties Inc.'s successors in interest.

[¶ 22] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.