[Cite as *Kocher v. Ascent Resources-Utica, L.L.C.*, 2023-Ohio-3592.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

SUSAN KOCHER et al.,

Plaintiffs-Appellants,

v.

ASCENT RESOURCES-UTICA, LLC et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case Nos. 22 JE 0012, 22 JE 0014

---

Civil Appeals from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20 CV 82

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed in part, Affirmed in part, Remanded.

---

*Atty. Sean Richard Scullin*, Scullin & Cunning, LLC, 940 Windham Ct., Ste. 4, Boardman, Ohio 44512, for Appellants Susan Kocher  et al., *Atty. Joshua E. O'Farrell, Atty. Jude B. Streb, Atty. Justin S. Greenfelder,* Buckingham, Doolittle & Burroughs LLC, 4277 Munson Street, NW, Canton, Ohio 44718 for Appellant Bedway Land and Minerals Co. and

*Atty. Kevin L. Colosimo*, *Atty. Christopher W. Rogers,* Frost Brown Todd LLC*,* Union Trust Building, 501 Grant Street, Suite 800, Pittsburgh, PA 15219 for Appellee Ascent Resources-Utica, LLC and

*Atty. Jeffrey J. Bruzzese,* Bruzzese, Hanlin & Bruzzese, LLC, 100 N. 4th Street, 10 Floor,

P.O. Box 1506, Steubenville, Ohio 43952 for Appellees James T. Banal Jr. et al. and

*Atty. J. Zachary Zatezalo,* Bordas & Bordas, PLLC, 526 Seventh Street, Moundsville, West Virginia 26041 for Appellees James and Rebecca Mills.

Dated: September 28, 2023

―――――――――

**Robb, J.**

**{¶1}** These consolidated appeals concern the ownership of oil and gas rights underlying 102[1] acres of real property in Jefferson County. Appellants filed suit seeking quiet title to the oil and gas rights and named the surface owners of the real property as defendants.

**{¶2}** The trial court ultimately granted Appellees, the surface owners, summary judgment as a matter of law and found Appellants' interests in the underlying oil and gas rights, if any, were extinguished via the Marketable Title Act (MTA). It quieted title in Appellees' favor and determined Appellees own 100% of the oil and gas mineral interest underlying the property. The trial court did not address the parties' claims and arguments arising from the Dormant Mineral Act (DMA). (July 26, 2022 Order.)

**{¶3}** For the following reasons, the trial court's decision is reversed in part, affirmed in part, and the case remanded for further proceedings.

## Statement of the Case

**{¶4}** Appellants, Susan Kocher et al., consist of 81 individuals and one company, Bedway Land and Minerals Co. (Bedway), who are alleged heirs, successors, assigns, and holders of the mineral interests underlying six parcels of real property. Appellants filed suit in February of 2020. They filed their first amended complaint in November of 2020 and their second amended complaint on February 1, 2021.

**{¶5}** Appellants' second amended complaint named as defendants, Ascent Resources-Utica, LLC (Ascent), James M. and Rebecca L. Mills (the Mills defendants), Heather C. Mazey, Trustee of the Fashing Family Irrevocable Trust, James T. and Maria S. Banal, L.D. Jenkins, Mary L. Gorman, and Norman T. Fashing and Joyce K. Fashing,

---

[1] The exact acreage of the real property is referred to in title transactions and throughout the trial court proceedings as 102.167 in some pleadings and judgments and in others as 102.46. The discrepancy is evidently a result of modernized survey technology. Regardless, it is not an issue on appeal.

as Co-Trustees of the Norman T. Fashing and Joyce K. Fashing Family Trust (collectively the Fashing defendants). Appellants claim Ascent, L.D. Jenkins, and Mary L. Gorman may claim to have an interest in this lawsuit. Appellants contend the other named defendants are surface owners of the six parcels at issue and they wrongfully leased the attendant mineral rights underlying their respective real properties. (February 1, 2021 Second Amended Complaint.)

{¶6} Appellees moved to dismiss certain claims, contending each was a remedy and not a cause of action. The trial court agreed and dismissed four counts of Appellants' complaint. Appellants do not challenge this decision on appeal. The remaining counts after the motion to dismiss include the following.

{¶7} The first count in Appellants' second amended complaint sought declaratory judgment and a determination that Appellants are the owners of the mineral interests underlying the property. Appellants' second count seeks to quiet title the ownership of the property's mineral interests in their favor as owners or holders. Appellants' third count asserts an unjust enrichment claim. (February 1, 2021 Second Amended Complaint.)

{¶8} In their prayer for relief, Appellants sought declaratory judgment finding defendants failed to comply with the Dormant Mineral Act; an order quieting title in their favor to the mineral rights; and an order for an accounting of and imposition of a constructive trust for all funds received from the minerals, including royalties, and any other relief deemed necessary. (February 1, 2021 Second Amended Complaint.)

{¶9} The Mills defendants, surface owners of one of the parcels, counterclaimed to quiet title in their favor regarding the respective mineral rights. In January of 2013, the Mills filed an affidavit of abandonment, contending as surface owners that the prior reservations of mineral rights regarding their real property had been abandoned. (February 1, 2021 Second Amended Complaint, Exhibit E.)

{¶10} The Fashing defendants likewise counterclaimed and sought declaratory judgment and to quiet title in their favor. (July 2, 2020 Second Amended Answer & Counterclaim.) In December of 2013, the Fashings filed two affidavits of abandonment and averred the mineral exceptions and reservations regarding their surface estates had been abandoned. (Second Amended Complaint, Exhibit F & G.)

{¶11} After the exchange of discovery, the parties filed competing motions for summary judgment. The Fashing defendants moved for summary judgment in their favor, contending in part the 1957 Rembish deed is their root of title and that it does not contain an oil or gas reservation or exception. They also alleged the Rembish deed did not repeat a prior reservation or exception. They alleged their predecessor in interest, Bedway, acquired title to the 102 acres from ten co-owners of the property or co-tenants. The Fashing defendants alleged that Appellants' claims to the mineral rights were extinguished via the MTA in light of their unbroken chain of title in the land for more than 40 years, and because Appellants' claims stem from transactions before the 40-year period, these interests were extinguished as a matter of law. As for any alleged savings events, the Fashing defendants claimed the title transactions were general, not specific, and thus do not constitute savings events. Alternatively, they argued Appellants' interests, if any, were abandoned under the DMA. (June 4, 2021 Summary Judgment Motion.)

{¶12} The Mills defendants' response to summary judgment also claimed the February 4, 1957 Rembish deed was their root of title and showed they were the record title owners to the mineral rights. They alleged the Rembish deed met the substantive aspect of the root of title definition. The Mills defendants argued, because the real property was jointly owned by nine owners, Wilmetta Belon's conveyance to Bedway of a 1/10 interest had the effect of conveying an "undivided share and had the right of possession of the whole of the surface and mineral rights." And since the real property was not physically divided, she, as one co-tenant, had the right to lease oil and gas mineral production for the entirety of the tract. (July 16, 2021 Response to Summary Judgment.)

{¶13} Appellants urged the trial court to find that neither the MTA nor the DMA applied and their mineral interests were still viable. Regarding the Appellees' MTA arguments, Appellants contended the Rembish deed was not a proper root of title for several reasons. And regarding the DMA, Appellants claimed the surface owners failed to conduct a diligent search before resorting to notice by publication and that, regardless, there were timely notices to preserve recorded. (June 4, 2021 Summary Judgment Motion.)

Case Nos. 22 JE 0012, 22 JE 0014

**{¶14}** The trial court held a hearing on the cross motions for summary judgment and issued its decision on July 26, 2022. The trial court dismissed Appellants' unjust enrichment claim at the hearing. (August 9, 2021 Tr. p. 43.) Appellants do not challenge the dismissal of this claim on appeal.

**{¶15}** The trial court granted summary judgment in favor of Appellees, the surface owners, and found pursuant to the MTA, Appellees had unbroken chains of title from the recording of the Rembish deed to the present and Appellants' interests were extinguished by operation of law. (July 26, 2022 Order.)

**{¶16}** Appellants, Susan Kocher et al., the individuals and alleged heirs, successors, and assigns of the properties' mineral interests, appealed the July 26, 2022 summary judgment decision, and Appellant Bedway separately appealed. We consolidated the appeals in response to their joint request. Appellants raise five assignments of error.

## Standard of Review

**{¶17}** The interpretation of deeds is generally a question of law for a court to decide. Courts are to employ rules of contract construction to interpret deeds and focus on a plain reading of the words in the four corners of the document. *McGiffin v. Skurich*, 2021-Ohio-2741, 176 N.E.3d 833, ¶ 20 (7th Dist.), citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998), and *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, 155 N.E.3d 852, ¶ 17.

**{¶18}** We review questions of law and summary judgment decisions de novo and apply the same test as the trial court in determining whether summary judgment was proper. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998).

**{¶19}** Pursuant to Civ.R. 56(C), summary judgment should be granted when reasonable minds could reach but one conclusion and that conclusion is adverse to the nonmoving party. The moving party has the burden of showing no issue exists as to any material fact. *State v. Licsak*, 41 Ohio App.2d 165, 324 N.E.2d 589 (1974); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus (1988).

**{¶20}** Once the moving party meets his burden, the opposing party may not rely on the allegations in his pleadings, but must set forth facts showing there is a genuine

issue and produce evidence on issues that the party has the burden of proving at trial. Civ.R. 56(E); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). In determining a motion for summary judgment, the trial court will construe the evidence most strongly in favor of the nonmoving party and grant summary judgment where that party fails to make a showing sufficient to establish the existence of an essential element upon which the party bears the burden of production. *Celotex,* at 322, 106 S.Ct. 2548.

## Chain of Title

{¶21} The parties filed copies of the following documents.

{¶22} The deed recorded January 14, 1921 reflects the grantors, Mary Kithcart, Clyde Kithcart, Francis Kithcart, James Kithcart, Georgia Black, and John Black conveyed to Wm. H. Iler and Irving S. Iler a portion of the real property described in part as "Part S.W. Quarter Section #15, Twp. 8, Range 3" and "containing 41-4/10 acres, more or less." (Report of Rod Swearingen, Exhibit 4.) This left the approximate 102 acres now in dispute. (Report of Daryl J. Kirtley). A transfer was recorded on June 16, 1924. It shows the same transaction recorded in the deed, which was recorded in January of 1921 and conveying "Part S.W. Quarter Sec. #15, Twp. 8, Range 3" and "containing 41-4/10 acres, more or less." (Report of Daryl J. Kirtley, Exhibit 10.)

{¶23} The affidavit for transfer recorded June 12, 1933, shows real estate inherited by James T. Kithcart's heirs. His heirs include Georgia Black, Clyde Kithcart, and James T. Kithcart, and the transaction shows each obtained a 1/3 share of the real estate described in part as "containing 102 46/100 acres, more or less." (Exhibit C to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

{¶24} The deed recorded June 16, 1933, conveys the property from Georgia and John Black, James and Mary Kithcart, Clyde and Frances Kithcart to ten grantees, i.e., Ethel Murphy, Esta Stinard, Wilmetta Bellan, John Hartzell, Gladys Hennebert, Raymond Hartzell, Lawrence Hartzell, Rowland Hartzell, Mattie Hartzell and Virginia Hartzell, as heirs of James V. Hartzell, deceased. It conveyed real property in Smith Township, Jefferson County consisting of "102 46/100 acres, more or less" but excepting the coal rights previously sold. This 1933 deed does *not* contain a mineral rights exception. (June 4, 2021 Mills Motion for Summary Judgment, Exhibit E.) Thus, each of the ten grantees

obtained a 1/10 joint ownership interest in the surface and in the mineral rights underlying the property.

{¶25} The warranty deed recorded October 11, 1955 shows Minnie Iler, a widower, granting to Bedway Coal Company four different parcels in Smithfield Township, Jefferson County. One of the four listed parcels is described in part as "containing 41.4 acres more or less." The conveyance excepted 1.91 acres conveyed by William and Irving Iler to the Jefferson Coal Company in 1924. (Report of Daryl J. Kirtley, Exhibit 16.) This transaction shows Bedway acquiring the previously severed 41.4 acres.

{¶26} Four deeds or title transactions were recorded on February 9, 1957.

{¶27} The warranty deed dated July 30, 1956 and recorded February 9, 1957 shows Virginia Brake, a widow, granting her interest in the surface and mineral rights to Raymond V. Hartzell, which gave him a 2/10 ownership interest. (Exhibit G to Exhibit 1 to Plaintiff's Response to Summary Judgment Motions.)

{¶28} Bedway acquired its surface interest in the 102 acres via three separate deeds recorded on February 9, 1957. Two of these three February 1957 deeds contained a clause reserving the grantors' respective mineral rights.

{¶29} One warranty deed recorded February 9, 1957 conveyed "102 46/100 acres, more or less" from grantors, Ethel M. Murphy, unmarried, Esta and Loman Stinard, John and Martha Hartzell, and Gladys and Frank Hennebert, to the Bedway Coal Co. It states in part it is: "Also excepting and reserving all minerals except Vein Number Eight * * * of coal." (Complaint, Exhibit A.)

{¶30} By another warranty deed recorded February 9, 1957, Raymond and Louise Hartzell, Lawrence and Lillian Hartzell, Rowland and Bessie Hartzell, and Mattie Hartzell, unmarried, conveyed real estate consisting of "102 46/100 acres, more or less" to the Bedway Coal Co. It states in part it is: "Also excepting and reserving all minerals except Vein Number Eight * * *." (Complaint, Exhibit B.)

{¶31} By an administrator's or executor's deed, also recorded February 9, 1957, Mary Rembish, as executrix for the estate of Wilmetta Belon, aka Bellan, conveyed to the Bedway Coal Company real estate consisting of "an undivided one-tenth (1/10th) interest in the following described real estate: * * * containing 102 46/100 acres, more or less." This deed does *not* contain a reservation of mineral rights. (Complaint, Exhibit C.)

**{¶32}** In the year 2000, Bedway sold its surface rights to the property via three title transactions.

**{¶33}** On April 7, 2000, Bedway conveyed 34.72 surface acres to David A. Bailey, a portion of a 102.46 acre tract. This limited warranty deed states in part: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed. Applicable to both tracts." (Exhibit L to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

**{¶34}** Bailey subsequently conveyed his real property to James T. Banal, Jr. by limited warranty deed recorded August 29, 2003. This property is described as consisting of two tracts "[b]eing a portion of a 102.46 acre tract conveyed to Bedway Coal Company * * *." This deed states the conveyance was: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed. Applicable to both tracts." (Exhibit M to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

**{¶35}** On April 25, 2000, Bedway conveyed 37.489 acres to James and Rebecca Mills via a joint and survivorship deed. It describes the property as being portions of two tracts conveyed to Bedway Coal Company. This deed also stated it was: "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights and mining rights previously conveyed." (Exhibit N to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

**{¶36}** Bedway Coal Company conveyed 67.5 acres to Norman T. and Joyce K. Fashing via a joint and survivorship deed recorded on July 17, 2000. Both tracts conveyed are described as being a portion of a "102.46 acre tract conveyed to Bedway Coal Company." This deed states it is: "EXCEPTING AND RESERVING all coal, oil, gas rights and mining rights previously conveyed." It also states: "EXCLUDING all coal, oil, gas and mineral rights previously conveyed." (Exhibit Q to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

### The Marketable Title Act

**{¶37}** We address Appellants' first, second, fourth, and fifth assigned errors collectively, which assert:

> "[1.] The trial court erred in granting Appellees' Motion for Summary Judgment under the MTA. Judgment Entry ¶ 42."

"[2.] The trial court erred by denying Appellants' Motion for Summary Judgment under the MTA. Judgment Entry ¶ 42."

"[4.] The trial court erred by denying Appellants' Motion for Summary Judgment to quiet title to the 102 mineral acres. Judgment Entry at 43."

"[5.] The trial court erred by denying Appellants' Motion for Summary Judgment as to damages. Judgment Entry at 43."

Arguments Regarding Root of Title

**{¶38}** Appellants' first assigned error raises several reasons the trial court allegedly erred by finding the Rembish deed was a proper root of title for 100% of the mineral rights underlying the 102 acres.

**{¶39}** Appellants' second assigned error asserts, for these same reasons, the trial court should have granted summary judgment in their favor under the MTA. And Appellants' fourth and fifth assignments of error contend the trial court should have quieted title in their favor and awarded them damages as a result.

**{¶40}** The MTA provides a "marketable record title" to an individual who has an unbroken chain of title of record *to any interest* in land for at least 40 years *to that interest*. R.C. 5301.48. With limited exceptions delineated in R.C. 5301.49, a marketable record title "operates to extinguish" all interests and claims that existed *prior* to the effective date of the root of title, and those preexisting interests are "null and void." R.C. 5301.47(A); R.C. 5301.50.

**{¶41}** R.C. 5301.49 identifies exceptions from extinguishment, which the Ohio Supreme Court refers to as "saving events." *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 18. The MTA extinguishes property interests by operation of law after 40 years from the effective date of the root of title unless a saving event has occurred. *Id.* And an interest extinguished by operation of the MTA cannot be revived. R.C. 5301.49(D).

**{¶42}** A marketable record title remains subject to an interest predating the effective date of the root of title when: (1) the preexisting interest is specifically identified in the muniments which form the record chain of title; (2) the holder of the preexisting interest has recorded a notice claiming the interest, in accordance with R.C. 5301.51; or (3) the preexisting interest arises out of a title transaction that was recorded after the

effective date of the root of title. *West v. Bode*, 7th Dist. No. 18 MO 0017, 2019-Ohio-4092, 145 N.E.3d 1190, ¶ 23, *aff'd,* 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298. These exceptions or savings events shield the excepted interests from extinguishment. *O'Kelley v. Rothenbuhler*, 2021-Ohio-1167, 171 N.E.3d 775, ¶ 24-26 (7th Dist.), *appeal not allowed,* 165 Ohio St.3d 1456, 2021-Ohio-4033, 176 N.E.3d 758.

**{¶43}** Here, the trial court decided marketability from the date of Appellants' original complaint, February 25, 2020. It then found the first recorded deed in the chain of title more than forty years prior to that date was the 1957 Administrator's Deed of Mary Rembish, recorded at deed volume 342, Page 567, and recorded on February 9, 1957. The court noted there were two older deeds, i.e., the December 27, 1956 Hartzell deed and the December 28, 1956 Murphy deed. (July 26, 2022 Order.)

**{¶44}** The trial court noted the parties agreed the Rembish deed met the temporal requirement to be the root of title. Regarding the substantive aspect of root of title, the court found it was satisfied as well, explaining:

22. The *Rembish* deed conveyed the interest of Wilmetta Belon to Bedway Coal. Ms. Belon was a joint tenant in common to the original 102.46 acre surface and mineral interests. Ms. Belon acquired that interest jointly with 9 other individuals on June 6, 1933. As a joint tenant in common, Ms. Belon owned an undivided share and had the right of possession of the whole of the surface and mineral rights of the original 102.46 acre tract.

23. The other individuals, who were co-tenants with Ms. Belon, had previously conveyed their interests in the surface of the 102.46 acre tract to Bedway Coal in the previously executed and recorded *Hartzell* and *Murphy* deeds. The *Hartzell* and *Murphy* deeds purported to except and reserve the oil and gas mineral interests owned by the respective grantors in those deeds from conveyances to Bedway Coal.

24. The *Rembish* deed conveyed the Belon interest in the surface of the 102.46 acre tract. It is important to note that the Rembish deed, while an Administrator's or Executor's Deed, was not a judicial or partition deed and the deed did not physically separate, divide, or describe any new 1/10th size share of the property. The original 102.46 acres remained intact.

25.   The *Rembish* deed made absolutely no mention of any oil and gas mineral interests and made no attempt to reserve any such interest.

26. As a joint tenant in the tract, Ms. Belon had a right to full occupation and possession of the whole mineral interest.

27. Importantly, on the record at the August 9, 2021 hearing, Plaintiff Bedway Coal's counsel conceded, and even argued in support of the principle that an undivided ownership share of a mineral interest, such as Ms. Belon's provides that owner with a right of ownership as to the mineral interest as a whole.

* * *

29. The Belon interest was conveyed to Bedway Coal and subsequently conveyed onto the Defendants.

30. The Plaintiffs have asserted that the language in various deeds from Bedway Coal to the Defendants and/or their predecessors in interest included clear and unambiguous new reservations of mineral rights by Bedway.

* * *

33. Bedway's argument that the Belon interest was 'previously conveyed' to it and that interest is therefore excepted and/or reserved from the Bedway Coal transactions to the Defendants and/or their predecessors in title fails.

* * *

35.   The "EXCEPTING AND RESERVING all coal, oil, gas, mineral rights previously conveyed" language asserted by Bedway as a claim to ownership of the Belon interest does not clearly except or reserve any oil and gas minerals actually owned by Bedway Coal from the subject transactions.   Whatever interest Bedway had to the Belon interest was conveyed to the Defendants and/or their predecessors in interest.

36.   * * * the *Rembish* deed substantively accounts for the oil and gas mineral interests which are at issue in this case; that is, the oil and gas rights underlying the subject real estate as Wilmetta Belon owned an interest in

and fully possessed the entirety of those oil and gas mineral interests as a cotenant with her family members.

37. Each of the Defendants hold an unbroken chain of title as it relates to the Belon interest from the recording of the *Rembish* deed to the present.

(July 26, 2022 Order.)

**{¶45}** The court quieted title in favor of Appellees/Defendants as to the mineral interests underlying their properties pursuant to the MTA. The court did not address the merits of the parties' DMA arguments. (July 26, 2022 Order.)

**{¶46}** Appellants claim the trial court erred as a matter of law by finding the February 9, 1957 Rembish deed is a proper root of title for 100% of the mineral rights underlying the property. For the following reasons, we agree.

"Root of title" means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it is recorded.

R.C. 5301.47(E).

**{¶47}** This court has explained that a root of title consists of two distinct components, a substantive requirement and a temporal one:

The temporal element for a "root of title" is a title transaction that is at least 40 years preceding the date when marketability is being determined. Once that title transaction is found, it must be determined whether that title transaction meets the second element. This substantive element requires the title transaction to purport "to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title." R.C. 5301.47(E). A "root of title" cannot be the initial severance deed of the interest the person is seeking to have extinguished. This is because record marketable title extinguishes interests and claims existing prior to the effective date of the root of title, not when the interest and claims were created in the "root of title." R.C. 5301.47(A).

Case Nos. 22 JE 0012, 22 JE 0014

*Senterra Ltd. v. Winland*, 7th Dist. No. 18 BE 0051, 2019-Ohio-4387, 148 N.E.3d 34, at ¶ 53 (7th Dist.).

**{¶48}** The date of marketability here is February 25, 2020, the date of Appellants' initial complaint. Appellees alleged, and the trial court agreed, the root of title was the February 9, 1957 Administrator's Deed conveying the property from Mary Rembish to Bedway Coal Company. There is more than 63 years between the alleged root of title and the date of marketability, so there is no dispute the temporal element is satisfied.

**{¶49}** A proper root of title must "account for the interest the person is claiming to have record marketable title to." *Senterra, Ltd. v. Winland*, 169 Ohio St.3d 595, 2022-Ohio-2521, 207 N.E.3d 632. A plain reading of the Rembish deed shows it only conveyed 1/10 of an interest in the described property. Thus, the logical conclusion, when addressing the substantive aspect of root of title, is that the Rembish deed only "accounts for" 1/10 an interest—not the 100% as claimed by Appellees. *Id.* This conclusion is consistent with our obligation to interpret deeds with a focus on the plain language employed in the document. *See McGiffin v. Skurich*, 2021-Ohio-2741, 176 N.E.3d 833, ¶ 20 (7th Dist.).

**{¶50}** Furthermore, "[a] person can only convey what he or she owns." *Sharp v. Miller*, 7th Dist. No. 17 JE 0022, 2018-Ohio-4740, 114 N.E.3d 1285, ¶ 28. A plain reading of the Rembish deed shows Wilmetta Belon, conveyed to the Bedway Coal Company real estate consisting of "an undivided one-tenth (1/10th) interest in: * * * 102 46/100 acres, more or less." (Complaint, Exhibit C.) Consequently, the Bedway Coal Company could only convey this same 1/10 interest to Appellees. *See Senterra Ltd. v. Winland*, 7th Dist. No. 18 BE 0051, 2019-Ohio-4387, 148 N.E.3d 34, ¶ 68 (explaining a deed containing a 1/4 mineral reservation only purports to convey the remaining 3/4 interest in the oil and gas). A reading to the contrary defies logic and reason.

**{¶51}** The trial court appears to have erroneously applied other aspects of the law to reach the contrary conclusion. It cites the proposition that one co-tenant enjoys the right to use the whole of the land to support its decision that a co-tenant has the power to convey the whole property. Neither the parties nor the trial court identify legal authority for the proposition and conclusion that the right to occupy the whole parcel, i.e., the unity of possession, authorizes one co-tenant to sell or convey the property in its entirety. The

opposite is true. *See Black Stone Minerals Co., L.P. v. Brokaw*, 2017 ND 110, 893 N.W.2d 498, ¶ 9-10 (finding husband who owned property in fee simple absolute jointly with his wife was only capable of conveying his equal one-half interest).

**{¶52}** "A tenancy in common merely means two or more people hold an interest undivided without entitlement to an exclusive part but with entitlement to occupy the whole in common with the others, and upon death, a co-tenant's interest passes to her heirs and not to the surviving co-tenants. *See generally Webster v. Dwelling-House Ins. Co.*, 53 Ohio St. 558, 565, 42 N.E. 546 (1895)." *Richmond Mills, Inc. v. Ferraro*, 7th Dist. Jefferson No. 18 JE 0015, 2019-Ohio-5249, ¶ 42; *see generally Tomechko v. Garrett*, 7th Dist. No. 20 NO 0473, 2021-Ohio-1377, 172 N.E.3d 1087, ¶ 51, *appeal not allowed,* 164 Ohio St.3d 1441, 2021-Ohio-3233, 173 N.E.3d 1230 (noting a co-tenants' possession of land is consistent with a co-tenants' right to enter land at any time).

**{¶53}** "The central characteristic of a tenancy in common is simply that each tenant is deemed to own by himself, with most of the attributes of independent ownership, a physically undivided part of the entire parcel." TENANCY, *Black's Law Dictionary* (11th ed. 2019), quoting Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests* 54 (2d ed. 1984). "Because cotenants have distinct titles, 'one cotenant cannot convey away the interest of another cotenant.'" *Sullinger v. Reed*, 3rd Dist. Hardin No. 6-20-14, 2021-Ohio-2872, ¶ 27, quoting *Lewellyn v. Village of South Zanesville*, 43 Ohio App. 385, 390, 183 N.E. 306 (5th Dist. 1932). Thus, the trial court erred by holding a co-tenant's right to enter and enjoy the entirety of the land is synonymous with the right to convey it. *Id.*

**{¶54}** Accordingly, we conclude the Rembish deed does <u>not</u> satisfy the substantive element of the root of title definition because it purports to create less of an interest than "the interest claimed by" Appellees. This conclusion is based on the plain language of R.C. 5301.48, the plain language of the root of title definition, and the Supreme Court's decision in *Senterra, Ltd., supra*, at ¶ 15. On its face, the Rembish deed does not "purport to convey" the interest claimed to be owned by Appellees here.

**{¶55}** Furthermore, the trial court emphasizes Appellants' counsel conceded at the summary judgment hearing that one co-tenant has the authority to convey the property as a whole. First, this is not what this attorney was stating. Instead, Appellants'

attorney was explaining how a notice of preservation filed by one mineral interest holder acts to preserve all holders' interests. Counsel stated in part:

> when you have heirs who own * * * an undivided interest in those mineral rights * * * [i]t's not as if Farmer Smith gets this little piece of a mineral interest. * * * They own it in unified fashion. * * * [And] one holder who files a preservation has effectively preserved those interests for all of the other owners of the mineral interests, because they all own it together.

(August 9, 2021 Tr. p. 36-37.) More importantly, parties cannot concede or stipulate as to matters of law, only issues of fact. *Crow v. Nationwide Mut. Ins. Co.,* 159 Ohio App.3d 417, 2004-Ohio-7117, 824 N.E.2d 127, citing *Diversified Capping Equip., Inc. v. Clinton Pattern Works Inc.*, Wood App. No. WD-01-035, 2002 WL 537998 (Apr. 12, 2002). Consequently, to the extent the trial court relied on counsel's alleged concession about an issue of law, it erred.

**{¶56}** Moreover, the explicit reservations Appellees allege to have been extinguished under the MTA were created and recorded on the same date as the Rembish deed, the alleged root of title. As stated, there were three deeds or title transactions recorded on February 9, 1957, i.e., the Murphy deed, the Hartzell deed, and the Rembish deed in Volume 342 of the Jefferson County Recorder's Office conveying property to Bedway. The Rembish deed was the latest in time to be filed on this date, but it was nevertheless filed on the same date.

**{¶57}** "Marketable record title" is statutorily defined as "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, *existing prior to the effective date of the root of title*, as are stated in section 5301.50 of the Revised Code." (Emphasis added.) R.C. 5301.47.

**{¶58}** A plain reading of the definition of marketable record title shows it extinguishes interests "existing prior to the _effective date_ of the root of title." It does *not* state the MTA extinguishes an interest existing prior to the root of title, as Appellees impliedly argue, but "prior to the effective date of the root." Thus, this court concludes the MTA does not extinguish reservations or exceptions of mineral interests created on the same date as the alleged root of title, like those in the Murphy and Hartzell deeds here.

{¶59} Based on the foregoing, the trial court erred by concluding the Rembish deed was a proper root of title. Absent a proper root of title, there is no title of record upon which to rely for the marketability of title, and extinguishment under the MTA does not occur. R.C. 5301.48.

Arguments Regarding Bedway's 1/10 Mineral Right Reservation

{¶60} The final argument in Appellants' first assigned error argues the trial court erred by finding the Bailey, Mills, and Fashing deeds did not create a reservation in favor of Bedway, corresponding with the 1/10 mineral interest conveyed to Bedway by the Rembish deed. Thus, Appellants claim Appellees lack an "unbroken chain of title" to the 1/10 interest since the alleged root of title contains an explicit exception and creates a reservation of the mineral rights in Bedway's favor. We disagree with this aspect of their assignment.

{¶61} Appellants assert each of the deeds conveying the property from Bedway to Appellees contained language creating a new reservation of oil and gas rights in Bedway's favor. The trial court disagreed, and held in paragraphs 29-30, 33, and 35 of its opinion that the language did *not* create a new reservation but instead conveyed "[w]hatever interest Bedway had to the Belon interest * * * to the Defendants and/or their predecessors in interest." (July 26, 2022 Order.)

{¶62} As stated, the Rembish deed conveyed to the Bedway Coal Company real estate consisting of "an undivided one-tenth (1/10th) interest in the following described real estate: * * * containing 102 46/100 acres, more or less." This deed does not contain a reservation of mineral rights, and thus, it conveyed 1/10 of the surface rights and mineral rights to Bedway. (Complaint, Exhibit C.)

{¶63} Thereafter, and pursuant to three transfers in the year 2000, Bedway conveyed the property to the subsequent owners of the real property, i.e., the Bailey (Banal), Fashing, and Mills deeds. As detailed in the chain of title section of this opinion, each of these three deeds contain language stating: "EXCEPTING AND RESERVING all coal, gas, mineral rights and mining rights *previously* conveyed." (Emphasis added.) Additionally, the deed conveying the property from Bedway to the Fashings also states: "EXCLUDING all coal, oil, gas and mineral rights *previously* conveyed." (Emphasis added.) (Exhibit Q to Exhibit 1 to Plaintiffs' Summary Judgment Response.)

{¶64} The inclusion of the words "previously conveyed" makes it abundantly clear the grantor was not creating a new reservation in its favor, but was instead acknowledging and repeating that previous rights had been excepted. This conclusion is consistent with a plain reading of the language employed in the deed, and there is no ambiguity in this regard. Thus, the trial court is affirmed in part on this basis only.

{¶65} To summarize, we reverse the court's decision finding Appellants' interests have been extinguished by the MTA. We conclude Appellants' first and second assigned errors have merit, in part. The trial court erred by finding the Rembish deed was a proper root of title, but it correctly found the three title transactions recorded in the year 2000 did not create a reservation of mineral rights in Bedway's favor.

{¶66} As for Appellants' fourth and fifth assignments of error, which contend the trial court should have quieted title in their favor and awarded them damages, we decline to reach these issues since we reverse and remand for the trial court to address the merits of the parties' arguments under the DMA. Thus, any award of damages and an order quieting title are premature. *See State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998) (the ripeness requirement is designed to avoid premature adjudication of legal issues and conserve judicial resources).

### The Dormant Mineral Act

{¶67} Appellants' third, fourth, and fifth assigned errors concern the Dormant Mineral Act and assert:

"[3.] The trial court erred by denying Appellants' Motion for Summary Judgment under the DMA. Judgment Entry, at 43.

"[4.] The trial court erred by denying Appellants' Motion for Summary Judgment to quiet title to the 102 mineral acres. Judgment Entry, at 43.

"[5.] The trial court erred by denying Appellants' Motion for Summary Judgment as to damages. Judgment Entry, at 43."

{¶68} Appellants' third and fourth assigned errors assert the trial court should have granted summary judgment in favor of Appellants under the DMA, and their fifth assignment of error seeks an award of damages flowing from these arguments.

{¶69} As stated, the trial court did not address the parties' arguments about the DMA because the court found Appellants' mineral rights were extinguished under the

MTA. Because the trial court erred in the application of the MTA, the DMA arguments should be addressed.

**{¶70}** This court has consistently held a trial court should have the first opportunity to review the underlying claims, and as such, we decline to consider the merits of these assignments of error for the first time on appeal. *Fullum v. Columbiana Cnty. Coroner*, 2014-Ohio-5512, 25 N.E.3d 463, ¶ 45-46 (7th Dist.), citing *Tree of Life Church v. Agnew,* 7th Dist. No. 12 BE 42, 2014-Ohio-878, ¶ 27-28. In light of our reversal on Appellants' MTA arguments, we direct the trial court to address the parties' DMA arguments on remand.

## Conclusion

**{¶71}** Based on the foregoing, we reverse the court's decision finding Appellants' interests have been extinguished by the MTA. We conclude Appellants' first and second assigned errors have merit, in part. We affirm the trial court's finding that Bedway did not create a reservation in its favor via the three deeds conveying the property recorded in the year 2000.

**{¶72}** In light of our reversal on Appellants' MTA arguments, we decline to address assignments of error three, four, and five. Instead, we direct the trial court to address the parties' DMA arguments, whether to quiet title, and damages on remand.

**{¶73}** The trial court's decision is reversed in part, affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

Waite, J., concurs.

D'Apolito, P.J., concurs.

Case Nos. 22 JE 0012, 22 JE 0014

---

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed in part and affirmed in part. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**